## BLAKE *v.* McCLUNG.

176 59
178 291
178 298
178 299
178 302
178 303

**ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.**

No. 466. Submitted December 18, 1899.—Decided January 8, 1900.

The decision in *Blake* v. *McClung*, 172 U. S. 239, referred to; and it is held that the judgment now under review was not in conformity with the opinion and mandate in that case — the court adjudging, as it had adjudged in the previous case, that when the general property and assets of a private corporation, lawfully doing business in a State, are in the course of administration by the courts of such State, creditors who are citizens of other States are entitled, under the Constitution of the United States, to stand *in all respects* upon the same plane with creditors of like class who are citizens of such State, and cannot be denied equality of right simply because they do not reside in that State, but are citizens residing in other States of the Union.

THE case is stated in the opinion of the court.

*Mr. Tully R. Cornick* and *Mr. Heber J. May* for plaintiffs in error.

*Mr. S. C. Williams* and *Mr. John W. Green* for defendants in error.

Mr. Justice Harlan delivered the opinion of the court.

This case has been heretofore in this court upon writ of error brought to review a final decree of the Supreme Court of Tennessee. *Blake* v. *McClung*, 172 U. S. 239.

That decree was rendered in a suit instituted by C. M. McClung & Co. for the administration of the property and affairs of the Embreeville Freehold, Land, Iron and Railway Company, Limited — an insolvent British mining and manufacturing company doing business in Tennessee. Among the creditors who filed intervening petitions in the suit were C. G. Blake, a citizen of Ohio; Rogers, Brown & Company, the members of which firm were also citizens of Ohio; and the Hull Coal & Coke Company, a corporation of Virginia.

It was adjudged by the Supreme Court of Tennessee that all the creditors of the British corporation who resided in Tennessee were entitled to priority of payment out of its assets, real and personal, over all other creditors who did not reside in Tennessee, whether they were residents of other States of the United States or of the Kingdom of Great Britain; and that all creditors residing out of Tennessee, whether in other States of the Union or in the Kingdom of Great Britain, had the right and must share equally and ratably in the distribution of the assets of the company after the residents of Tennessee should have been first paid in full.

The decree so rendered was in conformity with a statute of Tennessee passed March 19, 1877, the fifth section of which provided: " That the corporations, and the property of all corporations coming under the provisions of this act, shall be liable for all the debts, liabilities and engagements of the said corporations, to be enforced in the manner provided by law, for the application of the property of natural persons to the payment of their debts, engagements and contracts. Nevertheless, creditors who may be *residents of this State* shall have *a priority in the distribution of assets, or subjection of the same, or any part thereof, to the payment* of *debts over all simple contract creditors, being residents of any other country or countries,* and also over mortgage or judgment creditors, for all debts,

engagements and contracts which were made or owing by the said corporations previous to the filing and registration of such valid mortgages, or the rendition of such valid judgments. But all such mortgages and judgments shall be valid, and shall constitute a prior lien on the property on which they are or may be charged as against all debts which may be incurred subsequent to the date of their registration or rendition. The said corporations shall be liable to taxation in all respects the same as natural persons resident in this State, and the property of its citizens is or may be liable to taxation, but to no higher taxation, nor to any other mode of valuation, for the purpose of taxation; and the said corporations shall be entitled to all such exemptions from taxation which are now or may hereafter be granted to citizens or corporations for the purpose of encouraging manufacturers in this State, or otherwise." Acts of Tennessee 1877, c. 31, p. 44.

The validity of that statute was drawn in question by Blake and Rogers, Brown & Company as well as the Hull Coal & Coke Company, who specially claimed that the judgment based upon the statute had denied to them respectively rights secured by the second section of the Fourth Article of the Constitution of the United States, providing that " the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States," as well as by the first section of the Fourteenth Amendment, declaring that no State shall "deprive any person of life, liberty or property without due process of law," nor "deny to any person within its jurisdiction the equal protection of the laws."

The Supreme Court of the State sustained the constitutionality of the statute, and from its final judgment Blake and Rogers, Brown & Company, and the Hull Coal & Coke Company, prosecuted a writ of error to this court.

The general question presented for determination by this court was thus stated in its opinion: "Beyond question, a State may through judicial proceedings take possession of the assets of an insolvent foreign corporation within its limits, and distribute such assets or their proceeds among creditors according to their respective rights. But may it exclude

citizens of other States from such distribution until the claims of its own citizens shall have been first satisfied? In the administration of the property of an insolvent foreign corporation by the courts of the State in which it is doing business, will the Constitution of the United States permit discrimination against individual creditors of such corporation because of their being citizens of other States, and not citizens of the State in which such administration occurs?"

Upon a review of prior decisions this court said: "The foundation upon which the above cases rest cannot however stand, if it be adjudged to be in the power of one State, when establishing regulations for the conduct of private business of a particular kind, to give its own citizens essential privileges connected with that business which it denies to citizens of other States. By the statute in question the British company was to be deemed and taken to be a corporation of Tennessee, with authority to carry on its business in that State. It was the right of citizens of Tennessee to deal with it, as it was their right to deal with corporations created by Tennessee. And it was equally the right of citizens of other States to deal with that corporation. The State did not assume to declare, even if it could legally have declared, that that company, being admitted to do business in Tennessee, should transact business only with citizens of Tennessee, or should not transact business with citizens of other States. No one would question the right of the individual plaintiffs in error, although not residents of Tennessee, to sell their goods to that corporation upon such terms in respect of payment as might be agreed upon, and to ship them to the corporation at its place of business in that State. But the enjoyment of these rights is materially obstructed by the statute in question; for this statute, by its necessary operation, excludes citizens of other States from transacting business with that corporation upon terms of equality with citizens of Tennessee. By force of the statute alone, citizens of other States, if they contracted at all with the British corporation, must have done so subject to the onerous condition that if the corporation became insolvent its assets in Tennessee should

first be applied to meet its obligations to residents of that
State, although liability for its debts and engagements was
'to be enforced in the manner provided by law for the appli-
cation of the property of natural persons to the payment
of their debts, engagements and contracts.' But, clearly the
State could not in that mode secure exclusive privileges to its
own citizens in matters of business. If a State should attempt,
by statute regulating the distribution of the property of insol-
vent individuals among their creditors, to give priority to the
claims of such individual creditors as were citizens of that
State over the claims of individual creditors, citizens of other
States, such legislation would be repugnant to the Constitu-
tion upon the ground that it withheld from citizens of other
States as such, and because they were such, privileges granted
to citizens of the State enacting it. Can a different principle
apply, as between individual citizens of the several States,
when the assets to be distributed are the assets of an insol-
vent private corporation lawfully engaged in business and
having the power to contract with citizens residing in States
other than the one in which it is located?"

Referring to the established rule that the property of a
corporation was a trust fund for the payments of its debts in
the sense that when it is lawfully dissolved and its affairs
closed, or when it is insolvent, all its creditors are entitled in
equity to have their debts paid out of the corporate property
before any distribution thereof among stockholders, this court
further said: "These principles obtain, no doubt, in Tennessee,
and will be applied by its courts in all appropriate cases be-
tween citizens of that State, without making any distinction
*between them.* Yet the courts of that State are forbidden, by
the statute in question, to recognize the right in equity of
citizens residing in other States to participate upon terms of
equality with citizens of Tennessee in the distribution of the
assets of an insolvent foreign corporation lawfully doing busi-
ness in that State. We hold such discrimination against
citizens of other States to be repugnant to the second section
of the Fourth Article of the Constitution of the United States,
although, generally speaking, the State has the power to pre-

scribe the conditions upon which foreign corporations may enter its territory for purposes of business. Such a power cannot be exerted with the effect of defeating or impairing rights secured to citizens of the several States by the supreme law of the land. Indeed, all the powers possessed by a State must be exercised consistently with the privileges and immunities granted or protected by the Constitution of the United States."

Again: "The statute of Tennessee did not make it a condition of the right of the British corporation to come into Tennessee for purposes of business that it should, at the outset, deposit with the State a fixed amount to stand exclusively or primarily for the protection of its Tennessee creditors. It allowed that corporation, after complying with the terms of the statute, to conduct its business in Tennessee as it saw fit, and did not attempt to impose any restriction upon its making contracts with or incurring liabilities to citizens of other States. It permitted that corporation to contract with citizens of other States, and then, in effect, provided that all such contracts should be subject to the condition (in case the corporation became insolvent) that creditors residing in other States should stand aside, in the distribution by the Tennessee courts of the assets of the corporation, until creditors residing in Tennessee were fully paid — not out of any funds or property specifically set aside as a trust fund, and at the outset put into the custody of the State, for the exclusive benefit, or for the benefit primarily, of Tennessee creditors, but out of whatever assets of any kind the corporation might have in that State when insolvency occurred. In other words, so far as Tennessee legislation is concerned, while this corporation could lawfully have contracted with citizens of other States, those citizens cannot share in its general assets upon terms of equality with citizens of that State. If such legislation does not deny to citizens of other States, in respect of matters growing out of the ordinary transactions of business, privileges that are accorded to it by citizens of Tennessee, it is difficult to perceive what legislation would effect that result. We adjudge that when the general property and assets of a private

corporation, lawfully doing business in a State, are in the course of administration by the courts of such State, creditors who are citizens of other States are entitled, under the Constitution of the United States, to stand upon the same plane with creditors of like class who are citizens of such State, and cannot be denied equality of right simply because they do not reside in that State, but are citizens residing in other States of the Union. The individual plaintiffs in error were entitled to contract with this British corporation, lawfully doing business in Tennessee, and deemed and taken to be a corporation of that State; and no rule in the distribution of its assets among creditors could be applied to them as resident citizens of Ohio, and because they were not residents of Tennessee, that was not applied by the courts of Tennessee to creditors of like character who were citizens of Tennessee."

In relation to the Hull Coal & Coke Company this court held that it was not a citizen of the United States within the meaning of the second section of the Fourth Article of the Constitution; and although a "person" within the meaning of the Fourteenth Amendment that company was not deprived of its property without the due process of law guaranteed by that amendment, and not being within the jurisdiction of Tennessee it could not invoke the protection of the clause forbidding the denial by a State of the equal protection of the laws to persons within its jurisdiction.

By the final order of this court the judgment of the state court was affirmed as to the Hull Coal & Coke Company, upon the ground that no right, privilege or immunity secured to it by the Constitution of the United States had been denied. As the other plaintiffs in error — Blake and Rogers, Brown & Company — the judgment was reversed, and the cause remanded for further proceedings not inconsistent with the opinion of this court.

After the decision here, the cause was again heard in the Supreme Court of Tennessee on the motion of Blake and Rogers, Brown & Company for a decree in conformity with the opinion and mandate of this court.

That court adjudged: "1. That the effect and purpose of

the opinion and mandate of the Supreme Court of the United States in respect to the rights of C. G. Blake and Rogers, Brown & Company, is to adjudge and decree that the said C. G. Blake and Rogers, Brown & Company are entitled to participate in the assets of the said Embreeville Freehold, Land, Iron and Railway Company, Limited, upon the basis of a broad distribution of the assets of said corporation among all of its creditors, without preference or priority, as though the act of 1877, chap. 31, had not been passed; and it is ordered that there be made a computation of the aggregate indebtedness due from the said insolvent corporation to its creditors of every class, wherever residing, and that there shall be paid to the said C. G. Blake, and the said Rogers, Brown & Company, the percentage and proportion which is found to be due to them as creditors of said corporation in the aggregate of assets thus ascertained.    2. It is further adjudged and decreed, that after thus setting apart to the said C. G. Blake, and Rogers, Brown & Company the proportion and percentage thus found to be due to them, that all the rest and residue of the estate of the said Embreeville Freehold, Land, Iron and Railway Company, Limited, is applicable *first* to the payment of the indebtedness due to the creditors of said corporation *residing within the State of Tennessee*, as provided in section 5 of chapter 31 of the acts of Tennessee, 1877, and that the residue of said estate, if any, shall then be applied *pro rata* to the payment of the debts of the alien and non-resident creditors of said corporation, other than the said C. G. Blake, and Rogers, Brown & Company." The cause was remanded to the court of original jurisdiction for the collection and distribution of the fund then in that court, and for the making of such further orders as might be found necessary to the final settlement of the cause.    Mr. Justice Beard dissented upon grounds stated in his opinion which is published in 52 S. W. Rep. 1001.

Blake and Rogers, Brown & Company excepted to the action of the state court "in determining that creditors residing in Tennessee were entitled under the act of 1877, c. 31, § 5, to any priority or preference, by way of increased

percentages in distribution" over them, on the ground that such priority and preference was in violation of section 2 of Article IV of the Constitution of the United States, and was not consistent with the opinion and mandate of this court. The present writ of error was brought to review the last judgment.

We are constrained to hold that the judgment of the Supreme Court of Tennessee is not in conformity with the opinion and mandate of this court. The thought expressed in our former opinion was that Blake and Rogers, Brown & Company, citizens of Ohio and general creditors of the Embreeville Freehold, Land, Iron and Railway Company, were entitled in the distribution in Tennessee of the assets of that insolvent corporation, to stand upon the same plane with citizens of Tennessee who were also general creditors of the same corporation; and that the judgment of the state court heretofore under review, 172 U. S. 539, so far as it gave priority to citizens of Tennessee over citizens of other States, was inconsistent with the second section of the Fourth Article of the Constitution of the United States, providing that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

By the judgment now under review certain creditors, solely because of their being citizens of Tennessee, are accorded advantages in the distribution of the assets in question which are denied to other creditors solely because of their being citizens of another State than Tennessee. That judgment gives to the plaintiffs in error respectively their percentage of the entire assets of the insolvent corporation upon the basis of equality among *all* the creditors, *wherever residing*, and that being done, the court in effect directs the idea of equality among all creditors to be abandoned, and "all the rest and residue of the estate" of the insolvent corporation to be applied *first* to the payment of the debts due to citizens of Tennessee. Thus the decree gave a decided advantage to Tennessee creditors over Ohio creditors, when, as Mr. Justice Beard correctly said, the cause was remanded by this court substantially with direction that the state court should see

to it that no advantage accrued to Tennessee creditors over the Ohio creditors.

It is not within the province of this court to prescribe the form of a decree to be entered for the distribution of the assets in question. But it is both its province and duty to adjudge, in accordance with the supreme law of the land, as we now do, that the plaintiffs in error, citizens of Ohio, are entitled to share in the distribution of the assets of this insolvent corporation upon terms of equality, in all respects, with like creditors who are citizens of Tennessee. No decree giving to the latter privileges or advantages that are denied to the former is, as we have heretofore adjudged, consistent with the Constitution of the United States. In the distribution of what is called in the decree "all the rest and residue of the estate of the Embreeville Freehold, Land, Iron and Railway Company," or in the proceeds thereof, the plaintiffs in error should be placed upon the same plane of equality with Tennessee creditors. The plaintiffs in error cannot be denied participation in any of the assets of the insolvent corporation that are taken into account when ascertaining the rights of the Tennessee creditors and the amounts to be paid to them on their respective demands. Whatever rule is applied for the benefit of the latter must be applied in behalf of the Ohio creditors.

*The judgment is reversed, and the cause remanded for such further proceedings as may be consistent with this opinion.*