## In re BOGGS–RICE CO., Inc.

### ATHENS STOVE WORKS, Inc., et al. v. FLEMING et al.

No. 3469.

Circuit Court of Appeals, Fourth Circuit.
July 13, 1933.

Benjamin Stone Gore, of Bristol, Va., for appellants.

Donald T. Stant, of Bristol, Va. (William H. Woodward and S. Bruce Jones, both of Bristol, Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order in a bankruptcy proceeding disallowing claims of priority asserted by appellants. Bankrupt was a Virginia corporation engaged in business and having assets within the state of Tennessee. Appellants are corporations of Tennessee doing business in that state. Their contention is that debts due them by the bankrupt are entitled to priority in payment from the assets in Tennessee over the claims of foreign corporations, although not over the claims of nonresident individuals. The District Court disallowed this claim of priority; and the correctness of this ruling is the only question raised by the appeal.

Appellants rely on the provisions of section 4134 of the Code of 1932 of Tennessee, the relevant portion of which is as follows: "That the corporations and the property of all corporations coming under the provisions of this act, shall be liable for all the debts, liabilities and engagements of the said corporations, to be enforced in the manner provided by law, for the application of the property of natural persons to the payment of their debts, engagements and contracts. Nevertheless, creditors who may be residents of this State shall have a priority in the distribution of assets, or subjection of the same, or any part thereof, to the payment of debts over all simple contract creditors, being residents of any other country or countries. * * *"

In Blake v. McClung, 172 U. S. 239, 19 S. Ct. 165, 173, 43 L. Ed. 432; Id., 176 U. S. 59, 20 S. Ct. 307, 44 L. Ed. 371, this statute was held violative of the "privileges and immunities" clause of the Constitution of the United States, article 4, § 2, in so far as it applied to individuals, but valid in so far as it gave a priority in the distribution of assets as against foreign corporations. With respect to its validity to this qualified extent, the court said:

"As to the plaintiff in error, the Hull Coal & Coke Company of Virginia, different considerations must govern our decision. It has long been settled that, for purposes of suit by or against it in the courts of the United States, the members of a corporation are to be conclusively presumed to be citizens of the state creating such corporation (Louisville, Cincinnati & Charleston Railroad Co. v. Letson, 2 How. 497 [11 L. Ed. 353]; Covington Draw Bridge Co. v. Shepherd, etc., 20 How. 227, 232 [15 L. Ed. 896]; Ohio & Miss. Railroad Co. v. Wheeler, 1 Black, 286, 296 [17 L. Ed. 130]; Steamship Co. v. Tugman, 106 U. S. 118, 120 [1 S. Ct. 58, 27 L. Ed. 87]; Barrow Steamship Co. v. Kane, 170 U. S. 100 [18 S. Ct. 526, 42 L. Ed. 964], above cited); and therefore it has been said that a corporation is to be deemed, for such purposes, a citizen of the state under whose laws it was organized. But it is equally well settled, and we now hold, that a corporation is not a citizen within the meaning of the constitutional provision that 'the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states' (Paul v. Virginia, 8 Wall. 168, 178, 179 [19 L. Ed. 357]; Ducat v. Chicago, 10 Wall. 410, 415 [19 L. Ed. 972]; Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566, 573 [19 L. Ed. 1029]). The Virginia corporation, therefore, cannot invoke that provision for protection against the decree of the state court denying its right to participate upon terms of equality with Tennessee creditors in the distribution of the assets of the British corporation in the hands of the Tennessee court. * * *

"It is equally clear that the Virginia corporation cannot rely upon the clause declaring that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.' That prohibition manifestly relates only to the denial by the state of equal protection to persons 'within its jurisdiction.' * * * We adjudge that the statute, so far as it subordinates the claims of private business corporations not within the jurisdiction of the state of Tennessee (although such private corporations may be creditors of a corporation doing business in the state under the authority of that statute) to the claims against the latter corporation of creditors residing in Tennessee, is not a denial of the 'equal protection of the laws' secured by the fourteenth amendment to persons within the jurisdiction of the state, however unjust such a regulation may be deemed."

And in the decision in Re Standard Oak Veneer Co. (D. C.) 173 F. 103, 105, 22 A. B.

R. 883, Judge Sanford, later of the Supreme Court, thus stated the rule of Blake v. McClung, which has since been universally accepted as a correct statement of the law: "In Blake v. McClung, 172 U. S. 239, 19 S. Ct. 165, 43 L. Ed. 432, it was held that, while this provision of the act was unconstitutional in so far as it gave the claims of Tennessee creditors of a foreign corporation priority over those of natural persons who were citizens of other states, it was a constitutional exercise of the power of the state to prescribe the conditions upon which a foreign corporation might enter its territory for purposes of business, in so far as it gave the claims of Tennessee creditors priority over those of other foreign corporations not doing business in Tennessee under the act, or under any statute directly bringing them within the jurisdiction of the courts of Tennessee."

The priority accorded Tennessee creditors over foreign corporations under this statute is enforced in bankruptcy proceedings because of the provisions of section 64b (7) of the Bankruptcy Act (11 USCA § 104 (b) (7), which is as follows: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (7) debts owing to any person who by the laws of the States or the United States is entitled to priority: Provided, That the term 'person' as used in this section shall include corporations, the United States and the several States and Territories of the United States."

And the reason for holding that the priority given by the statute is one which will be enforced under this provision of the Bankruptcy Act, and not a priority in distribution under state insolvency laws which will be disregarded, was well stated by Judge Sanford in the Standard Oak Veneer Co. Case, supra, as follows:

"It is also urged in behalf of petitioners that, although section 64b (5) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]) provides that in the administration of the bankrupt's estate priority shall be given to 'debts owing to any person who by the laws of the state or the United States is entitled to priority,' the provision of the act of 1877 should be regarded as an insolvency law in reference to foreign corporations, which was superseded by the federal bankruptcy act, and that hence the priorities which it gives should not be recognized. While, however, it is true that the enactment of the federal bankruptcy act superseded all state insolvency or bankruptcy laws relative to persons or acts declared by the Congress to be subjects of bankruptcy, so that no further proceedings could be had under such state laws (1 Remington on Bankruptcy, p. 993, § 1628), yet this rule relates merely to the administration of the state laws in proceedings in the state courts, and does not prevent the enforcement in the federal bankruptcy proceedings of any general priorities recognized by the state laws, where such priorities are conferred by the state statutes as substantive rights of priority not dependent upon the resort to particular remedies accessible only in proceedings in the state courts, and where such priorities are not in conflict with the express priorities declared by the federal bankruptcy act itself or otherwise in conflict with its provisions. 2 Remington on Bankruptcy, p. 1346 et seq., §§ 2194, 2198. Furthermore, the rule relied on by petitioners can have no application to the statutes in question, which are not, strictly speaking, state insolvency laws within the general rule of suspension, but merely statutes prescribing the conditions upon which foreign corporations may enter the state for purposes of business."

The learned judge below (4 F. Supp. 431), while recognizing the correctness of the rule laid down by Judge Sanford prior to the amendment made to section 64b, of the Bankruptcy Act by the Act of May 27, 1926, 44 Stat. 666 (11 USCA § 104 (b), was of opinion that that amendment had so changed the rule as to preclude the priority of Tennessee creditors over foreign or nonresident corporations. Prior to the amendment, section 64 (b) (7) appeared in the statute as 64 (b) (5), and gave priority to "debts owing to any person who by the laws of the States or the United States is entitled to priority." The amendment of 1926 added the proviso quoted above, viz., "Provided, That the term 'person' as used in this section shall include corporations, the United States and the several States and Territories of the United States." It was the opinion of the judge that the effect of this proviso was to change the rule in question so as to abolish the priority given by local statutes to resident creditors as against nonresident corporations.

It is perfectly clear that the only office of the proviso is to define "person" as used in the section, and thus designate more clearly those whose priority is to be recognized and enforced, not to exclude from priority

one coming within the definition and entitled to priority under the laws of the States or of the United States. One purpose which Congress doubtless had in mind in enacting it was to meet the decision in Davis v. Pringle, 268 U. S. 315, 45 S. Ct. 549, 69 L. Ed. 974, decided May 4, 1925, in which it was held that the United States was not a "person" within the meaning of the section, and hence not entitled to preferential payment under section 3466 of the Revised Statutes (31 US CA § 191). See Remington on Bankruptcy, vol. 6, 1932 Supplement, p. 136.

But the language of the statute is free from ambiguity; and, where this is the case, its plain meaning is to be accepted without resort to the rules of interpretation. Where there is ambiguity, the history of the statute, its purpose, its reason and spirit, the old law, the mischief, the remedy proposed, the reports of committees of Congress, and the debates in the House and the Senate, may all be looked to for the purpose of ascertaining what Congress intended, but not where the meaning of the language used is clear. The rules of interpretation are resorted to for the purpose of resolving ambiguity, not for the purpose of creating it. Caminetti v. U. S., 242 U. S. 470, 490, 37 S. Ct. 192, 196, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; MacKenzie v. Hare, 239 U. S. 299, 308, 36 S. Ct. 106, 60 L. Ed. 297, Ann. Cas. 1916E, 645; South Carolina Produce Ass'n v. Com'r of Internal Revenue (C. C. A. 4th) 50 F.(2d) 742; Kelleher v. French (D. C.) 22 F.(2d) 341, 346, and cases there cited. The rule is well stated in 25 R. C. L. 957, as follows:

"A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. When the meaning of a law is evident, to go elsewhere in search of conjecture in order to restrict or extend the act would be an attempt to elude it, a method which, if once admitted, would be exceedingly dangerous, for there would be no law, however definite and precise in its language, which might not by interpretation be rendered useless. In such a case arguments from the reason, spirit, or purpose of the legislation, from the mischief it was intended to remedy, from his-

tory or analogy for the purpose of searching out and justifying the interpolation into the statute of new terms, and for the accomplishment of purposes which the lawmaking power did not express, are worse than futile. They serve only to raise doubt and uncertainty where none exist, to confuse and mislead the judgment, and to pervert the statute. Affirmative discussion in such circumstances is not unlike argument in support of a self-evident truth. The logic may mislead or confuse. It cannot strengthen the pre-existing conviction. This is an axiomatic principle; it is embodied in the maxim Expressum facit cessare tacitum (a thing expressed puts an end to implication.)"

And the rule was applied in Caminetti v. U. S., supra, to exclude reference to reports of committees of Congress, where the language of the statute was plain. The court, speaking through Mr. Justice Day, said: "Reports to Congress accompanying the introduction of proposed laws may aid the courts in reaching the true meaning of the legislature in cases of doubtful interpretation Blake v. National Banks, 23 Wall. 307, 319, 23 L. Ed. 119, 120; Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 42, 15 S. Ct. 508, 39 L. Ed. 601, 613; Chesapeake & Potomac Telephone Co. v. Manning, 186 U. S. 238, 246, 22 S. Ct. 881, 46 L. Ed. 1144, 1147; Binns v. United States, 194 U. S. 486, 495, 24 S. Ct. 816, 48 L. Ed. 1087, 1090. But, as we have already said, and it has been so often affirmed as to become a recognized rule, when words are free from doubt they must be taken as the final expression of the legislative intent, and are not to be added to or subtracted from by considerations drawn from titles or designating names or reports accompanying their introduction, or from any extraneous source. In other words, the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent."

In the light of this rule, it is quite immaterial that the American Bar Association in 1925 urged the adoption of an amendment to the subsection, the effect of which would have been to eliminate priorities granted by any state to its residents and domestic corporations over foreign corporations, or that the amendment as originally passed by the Senate embodied this recommendation of the bar association. We must look to the language of the statute as finally enacted; and, when we do so, we find no ambiguity in it and no reason to resort to rules of interpre-

tation. It is worth noting, however, that the Attorney General in his report in 1931 on the Bankruptcy Law (Senate Document No. 65, 72d Congress, 1st Session, page 135) was evidently of opinion that the amendment of 1926 had not covered the proposal of the bar association; for he cited the proposal, and the reasoning of the bar association in support of it, and recommended its adoption.

■ We have carefully considered the opinion in the case of In re C. D. Hauger Co. (D. C.) 54 F.(2d) 117, as well as the reasoning of the learned judge below; but, as stated above, we think that the language of the statute is clear, and that there is no reason for resort to interpretation. We are impressed with the wisdom of the recommendation of the bar association; but in our opinion Congress has clearly not adopted it as yet, and it is our duty to declare the law as it is. The decree of the court below will accordingly be reversed.

Reversed.