MIEYR, Respondent, *v.* FEDERAL SURETY COMPANY OF DAVENPORT, IOWA, et al., Respondents; WILLIARD et al., Appellants.

(No. 7,074.)

(Submitted June 15, 1934. Decided July 24, 1934.)

[34 Pac. (2d) 982.]

*Mr. Louis P. Donovan* and *Messrs. Belden & DeKalb,* for Appellants, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

*Messrs. Cook & Balluff,* of the Bar of Davenport, Iowa, and *Messrs. Gunn, Rasch, Hall & Gunn,* for Respondents Federal Surety Company and E. W. Clark, Receiver, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Enor K. Matson,* Assistant Attorney General, *Amici Curiae,* submitted a brief.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This cause was heretofore before this court. (94 Mont. 508, 23 Pac. (2d) 959.) The decision there rendered was reviewed by the Supreme Court of the United States. (*Clark* v. *Williard,* 292 U. S. 112, 54 Sup. Ct. 615, 622, 87 L. Ed. 1160.) The facts in detail are stated in our former opinion. The following brief summary of the facts, however, is sufficient for the solution of the question now before us:

Williard and others brought a suit in the district court of Fergus county against the Federal Surety Company. A trial was had, resulting in a judgment of nonsuit, which was reversed on appeal. (*Williard* v. *Federal Surety Co.,* 91 Mont. 465, 8 Pac. (2d) 633.) The courts of Iowa adjudged the dissolution of the Federal Surety Company and appointed Clark receiver for the company. Mieyr, a simple contract creditor, sought in the district court of Cascade county the appointment of an ancillary receiver of the assets of the

surety company in Montana. The application was resisted by Clark. The case of *Williard* v. *Federal Surety Company* was again tried and judgment rendered in favor of Williard et al. Leave was sought and granted by the district court of Cascade county to levy execution issued on the Fergus county judgment upon property belonging to the surety company within the state of Montana. Levy of execution was made. Clark, by separate petition setting forth the judgment of the Iowa court and the statutory law of that state applicable thereto, joined in the request of Micyr to secure the appointment of an ancillary receiver for the assets of the surety company in Montana. A revocation of the leave granted to levy the execution was sought and granted. These various events, without reference to the dates, occurred in the order recited.

On the former appeal to this court it was decided that Mieyr, being only a simple contract creditor, was not entitled to secure the appointment of a receiver, that the suit in Fergus county did not abate, and the judgment there rendered was a valid judgment. These conclusions were affirmed by the Supreme Court of the United States. We further decided on the former appeal that the status of Clark was that of a mere equity receiver, and accordingly the property of the surety company was subject to attachment and levy on execution under the laws of this state. The Supreme Court of the United States held that we misjudged the quality of the title of Clark; that, under the statutes of Iowa, Clark was the official liquidator—the successor to the corporation—and not a mere equity receiver, and that his title is the consequence of a succession established for the corporation by the law of its creation. In our former opinion holding the levy of the execution good as against the claim of Clark on the theory that he was not a statutory liquidator, but only an equity receiver, we expressed no opinion as to whether the same result would obtain if we recognized his status to be that as determined by the Supreme Court of the United States. The cause was remanded to us with the following directions: "The Supreme

Court of Montana will determine whether there is any local policy whereby an insolvent foreign corporation in the hands of a liquidator with title must submit to the sacrifice of its assets or to their unequal distribution by writs of execution.''

By this mandate we are commanded to determine, and thereby declare, the policy of the laws of this state. This court, in the case of *State* v. *Gateway Mortuaries, Inc.*, 87 Mont. 225, 287 Pac. 156, 157, 68 A. L. R. 1512, said: ''What ▆▆ is the public policy of a state, and what is contrary to it, is not to be measured by the private convictions or notions of the persons who happen to be exercising judicial functions, but by reference to the enactments of the lawmaking power, and, in the absence of them, to the decisions of the courts. When, however, the Legislature has spoken upon a particular subject and within the limits of its constitutional powers, its utterance is the public policy of the state. (Mr. Chief Justice Brantly in *MacGinniss* v. *Boston & Mont. C. C. & S. M. Co.*, 29 Mont. 428, 75 Pac. 89, and *Parchen* v. *Chessman*, 49 Mont. 326, 142 Pac. 631, 146 Pac. 469, Ann. Cas. 1916A, 681).''

Being mindful of the fact that we have under consideration ▆▆ the assets of a dissolved foreign corporation and the claim of a statutory liquidator to the assets, we must, in determining the public policy, first give consideration to the state of the law with reference to dissolved domestic corporations, lest we lead to discriminations within the prohibitions of the Fourteenth Amendment to the Federal Constitution.

Section 6011, Revised Codes 1921, provides that: ''Unless other persons are appointed by the court, the directors of any corporation, at the time of its dissolution by expiration of its charter or otherwise, are trustees of the creditors and stockholders or members of such corporation, and have full power to settle and liquidate its affairs, and such trustees, or a majority thereof, or in case of the death of one or more of such trustees, a majority of such survivors, are authorized to execute grants and conveyances of both real and personal property of such dissolved corporation. * * * ''

Section 9303, Id., relates to the appointment of receivers for dissolved corporations. Subdivision 5 of section 9301 authorizes the appointment of receivers for dissolved or insolvent corporations, but only in actions pend'ng. Under this section there cannot be such a thing as an action brought distinctly and solely for the appointment of a receiver. (*State ex rel. First Trust & Savings Bank* v. *District Court*, 50 Mont. 259, 146 Pac. 539.) Since the only purpose of this proceeding in the lower court was the appointment of a receiver, section 9301 is without application.

This court had before it for construction what is now section 6011, supra, and, from a reading of the case, must have considered our present section 9303, in *Ferrell* v. *Evans*, 25 Mont. 444, 65 Pac. 714, 718, wherein it was said: "Section 561 of the Civil Code [section 6011, Rev. Codes 1921] constitutes the directors of a corporation dissolved for any reason trustees for the creditors and shareholders, with full power to wind up its affairs, unless some other person be appointed for that purpose. No exception is made in case of insolvency. The intention of the legislature seems to have been to provide the most inexpensive and expeditious way for the administration of the affairs of a defunct corporation by confiding them to the hands of those who are best acquainted with them, and have a direct personal interest in preserving and appropriating the assets to their legitimate purposes, subject to an accounting or removal by a court of equity at the instance of a shareholder or creditor whose rights are jeopardized or betrayed. (*Havemeyer* v. *Superior Court*, 84 Cal. 327, 24 Pac. 121, 10 L. R. A. 627, 18 Am. St. Rep. 192.) In no case, however, will a court resort to a removal of a statutory receiver, and appoint one in his stead, until it is made to appear that the person complaining has been, or is about to be, injured by an unwarranted procedure on his part. In this case, as we have seen, the association was not insolvent."

The trustees of a dissolved corporation acting pursuant to section 6011 may be sued in the courts. (*Gilna* v. *Barker*, 78 Mont. 357, 254 Pac. 174.) The property of the dissolved cor-

poration so being administered is subject to attachment in the same manner and in the same cases where a writ of attachment would run against the property of the corporation itself. (*Gilna* v. *Barker,* 78 Mont. 343, 254 Pac. 169. See, also, *Gilna* v. *Fidelity & Deposit Co.,* 83 Mont. 231, 272 Pac. 540.) Since the property of the dissolved corporation in the hands of the statutory trustees may be attached, preferences to creditors will logically follow. The question, therefore, arises, May the court, under the provisions of section 9303, appoint a receiver in cases where the assets of a dissolved corporation are insufficient to pay the debts, and thereby secure a ratable distribution of its assets, and so prevent their unequal distribution?

It has been suggested that unless the provisions of section 9303 are held to so authorize the appointment of a receiver, there is little excuse for the existence of the section. Numerous situations, however, may arise where the necessity of a receiver would be apparent and where the provisions of the section would afford the court authority for the appointment of a receiver aside from the suggested situation, as, where all the statutory trustees are dead, incompetent, or beyond the jurisdiction of the court; or where the trustees refuse or absolutely fail to perform the duties imposed upon them by the statute; or upon any other ground which would justify a court in removing them from their office aside from preventing the unequal distribution of the assets among the creditors where the funds of the dissolved corporation are insufficient to pay the debts.

As this court pointed out in the case of *Ferrell* v. *Evans,* supra, the directors of a dissolved corporation, for any cause, become the statutory trustees, and insolvent corporations are not excluded from the operation of the statute.

A debtor may pay one creditor in preference to another. (Sec. 8601, Rev. Codes 1921.) An insolvent corporation, in the absence of statutory prohibition, may prefer one creditor over another; the rule being the same with reference to corporations as it is to individuals. (*Ames & Frost Co.* v. *Heslet,*

19 Mont. 188, 47 Pac. 805, 806, 61 Am. St. Rep. 496.) It was there contended that a different rule should prevail with reference to corporations from the prevailing rule applicable to individuals. In response to the argument the court said: "The policy of allowing such preferences may be pernicious, even more so than that of allowing an insolvent individual to prefer creditors; but in the one class, as in the other, it is for the legislature to decide the question of policy, not the courts."

The legislature in the enactment of section 6011 having included all dissolved corporations, and having failed to exempt from its provisions insolvent corporations, whatever the rule may have been or may now be elsewhere at common law, the rule in this state is that there is no common law in any case where the law is declared by the Code or statute. (Sec. 10703, Rev. Codes 1921; *Truro* v. *Passmore,* 38 Mont. 544, 100 Pac. 966; *Gillespie* v. *Great Northern Ry. Co.,* 63 Mont. 598, 208 Pac. 1059; *State* v. *Newman,* 66 Mont. 180, 213 Pac. 805.)

We therefore conclude that the courts of this state will not appoint a receiver to supplant the statutory trustees of a dissolved insolvent corporation upon the sole and only ground of preventing the unequal distribution of its assets.

This court in the case of *Rohr* v. *Stanton Trust & Savings Bank,* 76 Mont. 248, 245 Pac. 947, applied the general principle of equity that the assets of an insolvent corporation are to be distributed ratably among general creditors in the distribution of assets of a bank, and held that a general creditor might not secure a preference over the other creditors. The principles therein announced, however, are declared by statutes then and now in existence and relating only to banking corporations. At the time of the rendition of the decision under discussion, the liquidation of insolvent banks was provided for in involuntary proceedings by section 6079, Rev. Codes 1921; and Chapter 90 of the Laws of 1923 authorized the liquidation thereof by stockholders. Likewise in the same Chapter, section 6109h provided that "no property owned by any bank, organized under the laws of the State of Montana, shall be subject to attachment." This enactment was carried forward without

alteration as section 96, Chapter 89, Laws 1927. Sections 121 to 138 of Chapter 89 provide the manner now existing for the liquidation of insolvent banks under the supervision of the superintendent of banks, which likewise assures the ratable distribution of the assets of an insolvent bank.

Since the decision in the *Stanton Case* and subsequent thereto, with the right of attachment as against the bank denied by statute, it was and is impossible for a creditor, whose claim was not reduced to judgment, to secure a preference against a banking corporation through involuntary proceedings. No like statutes exist with reference to the attachment of the property of other corporations or persons. The property of all persons and corporations, other than banking corporations, unless exempt from execution, is subject to attachment in any action upon a contract, express or implied, for the direct payment of money, where the contract is not secured by mortgage or pledge. (Sec. 9256, Rev. Codes 1921.) True, attachments against many insolvent corporations and individuals may be released and a preference avoided by recourse to proceedings under the bankruptcy law. Banking and insurance companies may not become bankrupts, either voluntary or involuntary. (11 U. S. C. A., sec. 22.) Wage-earners and persons engaged either in farming or chiefly in the tillage of the soil may not be adjudged involuntary bankrupts. (Id.)

As to persons and corporations who may not be adjudged involuntary bankrupts, and as against whom writs of attachment may issue, no exception is made under our law whereby, as to such persons or corporations if insolvent, preferences resulting from attachments may be released at the instance of other creditors, resident or otherwise. The relegation of the creditors of insolvent corporations or individuals to a race of diligence "may be pernicious in its effect and may not result in justice according to judicial notion." The legislature has by the all-inclusive attachment laws made them applicable to all persons and corporations (except banking corporations) alike, without regard to the solvency or insolvency of the at-

tachment debtors. The legislature has spoken; it has declared the policy of the state, which is binding upon us.

It may be well to note in passing that the rights to secure writs of attachment in this state are available to residents and nonresidents alike, as against residents and nonresidents alike. A nonresident may come into Montana and secure a writ of attachment upon exactly the same terms as one of its citizens.

Full faith and credit must be given to the decree of the ▆▆▆▆ Iowa court and the statutes of that state in this respect, that Clark was entitled to the property, not as an ordinary receiver, but as a quasi-assignee of the dissolved corporation by force of statute entitled of right to defend or sue in its stead in this state. (*United States Truck Co.* v. *Pennsylvania Surety Corp.*, 259 Mich. 422, 243 N. W. 311.) But the laws of the state of Iowa do not have extraterritorial force. Rights and remedies of property are governed by the laws of the state in which it is situated. The statutory assignment can only be given force in other states on the ground of comity; not by constitutional mandate. (*United States Truck Co.* v. *Pennsylvania Surety Corp.*, supra; *Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183, 110 N. E. 502; *Gilman* v. *Ketcham*, 84 Wis. 60, 54 N. W. 395, 23 L. R. A. 52, 36 Am. St. Rep. 899.) The Supreme Court of the United States has written in the case of *Disconto Gesellschaft* v. *Umbreit*, 208 U. S. 570, 28 Sup. Ct. 337, 339, 52 L. Ed. 625: " ' "Comity," in the legal sense,' says Mr. Justice Gray, speaking for this court in *Hilton* v. *Guyot*, 159 U. S. 113, 163, 16 Sup. Ct. 139, 143, 40 L. Ed. 95, 108, 'is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.' * * * Speaking of the doctrine of comity, Mr. Justice Story says: 'Every nation must be the final judge

for itself, not only of the nature and extent of the duty, but of the occasions on which its exercise may be justly demanded.' (Story, Confl. L., sec. 33.)   The doctrine of comity has been the subject of frequent discussion in the courts of this country when it has been sought to assert rights accruing under assignments for the benefit of creditors in other states as against the demands of local creditors, by attachment or otherwise in the state where the property is situated.   The cases were reviewed by Mr. Justice Brown, delivering the opinion of the court in *Security Trust Co.* v. *Dodd, Mead & Co.,* 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835, and the conclusion reached that voluntary assignments for the benefit of creditors should be given force in other states as to property therein situate, except so far as they come in conflict with the rights of local creditors, or with the public policy of the state in which it is sought to be enforced; and, as was said by Mr. Justice McLean in *Oakey* v. *Bennett,* 11 How. 33, 44, 13 L. Ed. 593, 597, 'national comity does not require any government to give effect to such assignment (for the benefit of creditors) when it shall impair the remedies or lessen the securities of its own citizens.' ''

It must be borne in mind that Clark, the statutory liquidator, did not appear in the courts of Montana and assert the right to have a receiver appointed until long after the levy of the execution.   As was pointed out in the case of *Clark* v. *Williard,* supra, there is no invariable rule by which the title of a statutory liquidator must prevail over executions and attachments outside the state of his appointment.   There are many cases there collected which lay down the rule that the title of such a liquidator will have recognition and enforcement everywhere without exception.   Others take the view that the claims of local creditors who have by process attached a lien upon the assets of the dissolved corporation are entitled to precedence under facts in the material essentials in nowise different from the one now before us.   (*Lackmann* v. *Supreme Council O. C. F.,* 142 Cal. 22, 75 Pac. 583; *Zacher* v. *Fidelity Trust & Safety-Vault Co.,* 109 Ky. 441, 59 S. W. 493; *Shloss*

v. *Metropolitan Surety Co.*, 149 Iowa, 382, 128 N. W. 384, 385.) In the Iowa case a statutory liquidator of a dissolved insurance corporation from the state of New York was contesting the right of an attaching creditor within the state of Iowa to certain funds then under attachment. The Iowa court refused, on the principle of comity, to recognize the right of the foreign liquidator. Here we have an Iowa liquidator under a similar statute seeking the funds of the dissolved corporation upon the same principle of comity. The Iowa court, in reaching this conclusion, said: "The well-settled rule in this state is that the claim of a foreign receiver to funds of the corporation found in this state will not be recognized even by way of comity if the result would be to relegate the creditors of the corporation in this state to the relief to which they would be entitled in a foreign jurisdiction, when there are funds of the corporation in the state from which such claims may be satisfied." After reviewing numerous decisions cited in the opinion in *Clark* v. *Williard,* supra, in support of the opposite theory, and holding them without application, the court further said: "It must be borne in mind that the receiver here defending is simply a receiver of an insolvent company who is by the corporation laws of New York authorized to collect the debts, preserve the property, and distribute the assets of the company among its creditors, and we fail to see how any receiver thus provided for can in this state, as against the established rule of our law, take the company's assets found in this state and seized for the plaintiff in an attachment proceeding, out of our state without satisfying the valid claim of the attaching creditor, and compel him to resort to the courts of New York for the purpose of securing payment of such claim." The Iowa court adhered to its pronouncements made in the *Shloss Case,* in *Reed* v. *Hollingsworth,* 157 Iowa, 94, 135 N. W. 37.

In the case of *In re Nelson & Brother Co.,* (D. C.) 149 Fed. 590, 593, where it was sought, on the principle of comity, to secure the validation of an assignment of creditors in a foreign state, and where the state of its origin by settled rule of decision had declined to accord extraterritorial vitality to like

assignments, the court refused to recognize the assignment; and in the course of its opinion, speaking with reference to the principle of comity, said: ''It involves reciprocity, and it appears to me to be clearly against the policy of any state to grant to the citizens of another jurisdiction a privilege from which its own citizens are debarred by the repeated decisions of the highest court of said jurisdiction. I am therefore of opinion that, upon principles of public policy, the claims of the attaching creditors are to be preferred to that of the assignor.''

If the dissolved corporation were in Montana, and a statutory liquidator appointed in Montana under statutes identical with those of Iowa were making a like claim as against an attaching creditor under like circumstances, the Iowa courts under their established rules of decision would decline to accord the liquidator the right to secure priority over the attaching creditor. We therefore conclude that the liquidator from Iowa is entitled to receive no more consideration at the hands of our courts than would our citizens under like circumstances in theirs.

It is argued by counsel for Clark that under the authority of *Blake* v. *McClung,* 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432, Id., 176 U. S. 59, 20 Sup. Ct. 307, 44 L. Ed. 371, it is not within the power of the state to grant a preference or priority to local creditors over those from other states, by reason of the declaration in section 2, Article IV, of the Federal Constitution, providing that ''the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.'' In the *Blake Case* a statute of Tennessee provided generally that foreign mining corporations might operate in the state by complying with the provisions of the Act; that the corporations coming within the Act and their property were liable for their debts, to be enforced in the manner provided by law for the application of the property of natural persons to the payment of their debts, but creditors, residents of the state, were to be accorded a priority in the distribution of the assets of the corporation over creditors residing without the state. These facts clearly distinguished

that case from the one at bar. Here, any creditor, whether resident or not, was free at the time the levy of the execution was made to secure an attachment against the property of the Federal Surety Company. There is no denial of any privilege accorded to a Montana creditor to any nonresident creditor.

The cause is remanded to the district court of Cascade county, with direction to modify the order of August 25, 1932, to the end that the lien of appellants acquired by virtue of the levy of the execution is determined to be valid as against and prior to the claim of the respondent Clark, and of the receiver appointed by the district court; that the claim of the respondent Clark, and of the receiver so appointed, is superior to the claim of all persons attempting to assert a lien on the assets of the Federal Surety Company which was not perfected prior to August 3, 1932. The order of August 25, 1932, will, when so modified, stand affirmed. The appellants will recover their costs in this court.

Associate Justices Matthews and Stewart concur.

Mr. Chief Justice Callaway, dissenting: The Supreme Court of the United States has directed us to determine whether there is any local policy in this state whereby an insolvent foreign corporation in the hands of a liquidator with title must submit to the sacrifice of its assets or to their unequal distribution by writs of execution. In its discussion before reaching that direction, the Supreme Court said: "No statute or decision brought to our notice from Montana removes the question from the field of doubt. True, there are the statutes heretofore referred to whereby suit may be maintained against foreign corporations after dissolution on the same basis as against domestic ones. Nothing in those provisions declares the existence of a policy to allow the assets of an insolvent corporation to be torn to pieces at the suit of rival creditors when they could be distributed equally and without sacrifice at the hands of a receiver."

I do not know of any such policy announced by statute or decision in this state, and determine the quesiton in the negative.

The Supreme Court agrees with the statement in the original opinion of this court promulgated April 1, 1933, that the judgment of the respondents against the Federal Surety Company is valid, but does not agree that the levy of execution was valid. To make its decision upon that point certain, it declared, "the decree should be vacated in so far as it adjudges the validity and priority of the respondents' execution, * * * " taking the view that before the respondents were in a position to issue execution, the situation had been complicated by the suit filed by Mieyr for the purpose of obtaining an ancillary receivership to preserve the local assets.

I think it is unnecessary to discuss the question whether in the circumstances the appointment of Crichton on March 25, 1932, was valid, whether made under section 9301 or 9303, Revised Codes 1921. It seems to me that when Clark on August 3 served and filed an answer and cross-petition in the action wherein he pleaded the dissolution of the Federal Surety Company, and his appointment as "receiver and/or liquidator" under the laws of Iowa and that title to all the surety company's property passed to him, alleging that the assets should be distributed ratably to all creditors "subject to any liens and rights of creditors acquired on or prior to September 25, 1931, in or to specific property," and wherein he asked that Crichton be retained as receiver, the district court of Cascade county then had authority to appoint, or reaffirm, the appointment of Crichton as receiver.

The Supreme Court has declared that this court denied full faith and credit to the statutes and judicial proceedings of Iowa in holding that Clark was a receiver deriving title through a judicial proceeding, and not through the charter of Federal Surety Company's being and the succession there prescribed.

After a careful consideration of the authorities I am satisfied that the action of the district court of Cascade county on August 25, 1932, wherein that court held that the existence of the Federal Surety Company was terminated by the proceedings in Iowa, and that the title to all its property passed

to Clark as receiver (charter liquidator), and should be distributed ratably to all creditors "subject to any liens and rights of creditors acquired on or prior to September 25, 1931, in or to specific property," was correct. The court then confirmed the appointment of Crichton as ancillary receiver and directed that he receive proof of claims of all Montana creditors by requiring the claims to be filed with the clerk of the court in Cascade county, and provided further that when the claims allowed by its order were allowed by the Iowa court as entitled to share with the other claims of similar rank, Crichton should transmit and remit to the clerk all money and property in his hands as receiver, except such as were determined by the district court of Cascade county to be subject to specific lien, and such as might be necessary to pay the costs of proceedings in Montana, including the compensation of Crichton. It also provided that in the event claims allowed by the district court of Cascade county were not allowed in such manner as to permit claimant to share ratably with all other creditors of the surety company, then the money and property in the hands of Crichton should be retained by Crichton for distribution to creditors whose claims were allowed by order of the district court of Cascade county. The decree directed all persons to deliver to Crichton all money and property belonging to the surety company. It also revoked the order of May 24, 1932, granting permission to Williard, Wheaton and Hay, as trustees, to levy their execution. (*Mieyr* v. *Federal Surety Co.*, 94 Mont. 508, 23 Pac. (2d) 959.) .

Of course, attachments existing upon specific property or judgments being a lien upon real estate prior to the dissolution of the Federal Surety Company would have been preferred claims and payable as such, but the judgment of Williard, Wheaton and Hay, as trustees, was not a preferred claim. This judgment was not a lien on the property of the surety company when Mieyr began his action.

In the absence of preferred claims, I think it is the rule, sustained by the great weight of authority, that "during the

winding-up proceedings after dissolution, no creditor will be permitted by legal process or otherwise to acquire priority, or to enforce his claim against the property held for distribution as against the rights of other creditors.'' (8 Thompson on Corporations, sec. 6567 (6611); *Engineering Co.* v. *Perryman Elec. Co.*, 113 N. J. Eq. 255, 166 Atl. 461.) *Rohr* v. *Stanton Trust & Savings Bank*, 76 Mont. 248, 245 Pac. 947, while relating to the liquidation of a bank pursuant to statute, recognizes the principle above set forth.

Furthermore, as I understand the opinion of the Supreme Court of the United States, there being no local policy expressed in statute or decision whereby judgments and attachments, secured after the title to the property of the corporation has passed to a charter liquidator, have preference over his title, we should affirm the orders and judgment of the district court of Cascade county, from which the appeals in this case originated.

MR. JUSTICE ANGSTMAN, dissenting: I find myself unable to concur in the opinion written by MR. JUSTICE ANDERSON. The single question left for this court to pass upon under the mandate of the United States Supreme Court, is ''whether there is any local policy whereby an insolvent foreign corporation in the hands of a liquidator with title must submit to the sacrifice of its assets or to their unequal distribution by writs of execution.'' The United States Supreme Court in considering this question said that it ''is involved in confusion with decisions pro and con.'' But it also said: ''The tendency in most of the states is to give priority to the title unless a contrary policy is expressed with reasonable clarity.'' It cited in support of the rule, *Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183, 110 N. E. 502, *Kinsler* v. *Casualty Co.*, 103 Neb. 382, 172 N. W. 33, *Bockover* v. *Life Association of America*, 77 Va. 85, and *Cogliano* v. *Ferguson*, 245 Mass. 364, 139 N. E. 527. To those may also be added the case of *Engineering Co.* v. *Perryman Elec. Co.*, 113 N. J. Eq. 255, 166 Atl. 461, 462, where the court said: ''It is a well-

established rule of law that all creditors of a corporation, wherever residing, are entitled, in case of its insolvency, to have its general assets distributed among them upon principles of perfect equality, and that the courts of one state have no right to favor domestic creditors; therefore, this court cannot apply the assets in possession of its receivers to the payment of claims of creditors who are residents of this state in disregard of the rights of creditors who are residents of other states. Distribution must be made upon the principle that equality is equity.'' Such is the rule stated by Thompson in his work on Corporations, section 6566, third edition. That author also said: ''During the winding-up proceedings after dissolution, no creditor will be permitted by legal process or otherwise, to acquire priority, or to enforce his claim against the property held for distribution as against the rights of other creditors.'' (8 Thompson on Corporations, p. 758.)

Sections 6011 and 9303, Revised Codes 1921, and the cases cited and quoted from in the majority opinion interpreting these sections, have no application here. They do not deal with insolvent corporations. The cases of *Gilna* v. *Barker,* 78 Mont. 357, 254 Pac. 174, and *Gilna* v. *Barker,* 78 Mont. 343, 254 Pac. 169, were cases where the statutory trustees of a corporation whose charter life had expired were sued on contracts made by them after they became such trustees. The case of *Ames & Frost Co.* v. *Heslet,* 19 Mont. 188, 47 Pac. 805, 61 Am. St. Rep. 496, simply holds that a corporation, while a going concern, may, when insolvent, prefer one creditor over another. It does not aid us in the question here under consideration. The rule is otherwise where, as here, the corporation is both insolvent and has suspended business. (8 Thompson on Corporations, secs. 6188 and 6193.) We so held in *Cabot, Inc.,* v. *Gas Products Co.,* 93 Mont. 497, 19 Pac. (2d) 878. That a creditor of either a foreign or domestic insolvent corporation, dissolved by order of court, may thereafter obtain a preference over other creditors by execution on the funds of the corporation held in trust by the liquidator for the benefit of creditors seems to me preposterous.

In those cases holding that the title of the statutory receiver on dissolution of a foreign insolvent corporation is subject to execution, it is only so held in favor of creditors residing in the state where the execution is sought. This is the rule in Iowa. (*Shloss* v. *Metropolitan Surety Co.*, 149 Iowa, 382, 128 N. W. 384; *Watts* v. *Southern Surety Co.*, (Iowa) 248 N. W. 348.) Emphasis is placed upon the Iowa decisions by my associates in the foregoing opinion. Iowa does not recognize the right of a foreign liquidator even by way of comity, when to do so would relegate local creditors to a foreign jurisdiction to obtain the relief to which they are entitled.

We are here dealing with the rights of local creditors by virtue of an execution. But to avoid the force and effect of the case of *Blake* v. *McClung*, 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432, Id., 176 U. S. 59, 20 Sup. Ct. 307, 44 L. Ed. 371, which prohibits a state from favoring resident creditors over nonresident ones, the majority of my associates are announcing the startling policy, unheard of elsewhere, that any creditor, whether resident or foreign, may obtain such a preference. This policy, I venture to say, this court will hasten to reverse when a foreign creditor seeks its benefit to the prejudice of local creditors.

Under the sweeping policy announced in the opinion by Mr. Justice Anderson, a vigilant foreign creditor will be permitted to levy execution upon property in this state of a dissolved, insolvent foreign corporation and obtain a preference over Montana creditors, as against property situated in Montana. From this position this court will certainly retreat when a case is presented where a foreign creditor seeks by execution to obtain a preference over domestic creditors. Moreover, this is not a case where we can properly announce a policy on grounds of reciprocity. The majority think that, since Iowa would not recognize a Montana liquidator, we should not recognize an Iowa liquidator. It should be borne in mind that no Iowa creditors are here involved. The policy announced by this court may not affect Iowa creditors at all. It may affect Idaho creditors, and creditors from other states wherein a

different rule prevails from that established in Iowa. However desirable it might be to prefer resident creditors over nonresident ones, this may not be done without violating the Federal Constitution. (*Blake* v. *McClung*, supra.)

On one other ground I think the conclusion announced by the majority is erroneous. I think this court erred in the interpretation of our statutes on the former hearing in this case (94 Mont. 508, 23 Pac. (2d) 959), wherein it is held that the corporate life of the dissolved corporation was continued by our statutes for the purpose of obtaining judgment and execution. My reasons for so thinking are set forth in my dissenting opinion in that case. The Supreme Court of the United States could not, of course, consider that question. It was bound by the interpretation placed upon our statutes by this court. That is elementary law. That court only considers federal questions. At the very outset of the opinion of the United States Supreme Court, when reaching the merits of the case, it said: "We assume in accordance with the decision of the Montana court that the respondents' action against the surety company did not abate on dissolution, but was lawfully pursued to judgment." There was nothing else for that court to do, for under its repeated decisions it is bound by the interpretation placed by a state court upon its own statutes.

For the reasons stated in my dissenting opinion on the former appeal, I think the judgment and execution were ineffectual, and that the claim here involved stands only upon an equality with the claims of other creditors wherever residing. I also think this should be the policy to be announced by this court if it be assumed that the judgment against the dissolved corporation be valid. I think the judgment entered by the trial court gave the creditors here complaining all the protection to which they were and are entitled, and that it should be affirmed.

Petition of E. W. Clark, receiver of Federal Surety Company, respondent in above cause, for writ of certiorari, granted by Supreme Court of the United States October 15, 1934.