STATE, EX REL. NATIONAL SURETY CORPORATION, APPELLEE, v. WILLIAM B. PRICE, AUDITOR OF PUBLIC ACCOUNTS, ET AL., APPELLANTS: HOMER L. KYLE, ADMINISTRATOR, INTERVENER, APPELLANT.

FILED JULY 9, 1935. No. 29357.

*William H. Wright, Attorney General,* and *Edwin Vail,* for respondents.

*J. W. Kinsinger, H. C. Henderson* and *Stewart, Stewart & Whitworth,* for intervener.

*Smith & Schall* and *James C. Kinsler,* for relator.

*Howard Saxton* and *F. C. Radke, amici curiæ.*

Heard before GOSS, C. J., ROSE, GOOD, DAY and CARTER, JJ., and LOVEL S. HASTINGS and LIGHTNER, District Judges.

LIGHTNER, District Judge.

Mandamus to compel the auditor and other state officers to issue and deliver a warrant for $5,000 to relator, National Surety Corporation, being the premium on state treasurer Hall's bond for the biennium January, 1933, to January, 1935. The ·district court found for the relator, and the respondents and Kyle, administrator, intervener, appeal. The controversy arises from the fact that the National Surety Company, predecessor of the relator, Nation-

al Surety Corporation, wrote the state treasurer's bond for the biennium above referred to, and afterwards became in a failing condition, and was rehabilitated through certain proceedings in the state of New York and continued under the name of National Surety Corporation. The present suit is in effect a controversy between the National Surety Corporation, which claims the premium, and certain Nebraska creditors of the National Surety Company. The National Surety Corporation claims that it is the duly constituted successor of the National Surety Company, that it assumed the obligations of the company, received an assignment of this claim, and is entitled to the $5,000 premium. Respondents and intervener claim, on the other hand, that the $5,000 is a fund for creditors of the state of Nebraska and should be paid in satisfaction of their claims, rather than to relator corporation. The 1933 Nebraska legislature, in making appropriation for the premium, attempted to effectuate this latter purpose, and after making the appropriation added a proviso, the appropriation and proviso being as follows:

"Premium on Official Bond of State Officers

"National Surety Company, Omaha, premium on state treasurer's bond_____$5,000

"Provided that the claim of the National Surety Co., of Omaha, for $5,000 shall be paid to the director of insurance for the state of Nebraska to be held by him to satisfy claims against said National Surety Co., which is now in the hands of the Receiver." Laws 1933, ch. 15.

It is claimed that the title of the appropriation bill did not properly refer to the subject-matter of the proviso and is in violation of section 14, art. III of the Constitution. Other facts necessary for a complete understanding of the controversy are that, subsequent to the furnishing of the bond, to wit, on or about April 29, 1933, and while the state treasurer's bond was still in full force and effect, proceedings were commenced in the proper court of New York state, pursuant to the laws of that state, for the rehabilitation of the National Surety Company, which was a cor-

poration of New York; that, pursuant to the orders of that court in the rehabilitation proceedings and in accordance with the laws of New York, certain assets of the National Surety Company were conveyed to the relator, National Surety Corporation, also a corporation of New York, including the $5,000 here in dispute, which was then unpaid; that later certain creditors of the National Surety Company brought suit in the same court, or intervened in the rehabilitation proceedings and attacked the validity of said rehabilitation proceedings, and undertook to subject certain of the assets of the National Surety Company, or all its assets, to the satisfaction of their claims; that said suit was duly tried and by successive appeals was carried to the court of appeals, which is the highest court and court of last resort of New York, and determined against said creditors, the statute permitting rehabilitation was held valid, and the plan for the rehabilitation of the National Surety Company was in all respects confirmed and approved.

The district court made findings of fact as follows:

"That the relator, National Surety Corporation, from midnight of April 30, 1933, duly entered into an assumption of said state treasurer's bond of the respondent, George E. Hall, state treasurer of Nebraska, and the liability thereon, and that said bond, ever since midnight of April 30, 1933, has remained and is now in full force and effect as an obligation of the relator, National Surety Corporation; that the National Surety Company also made an assignment or bill of sale to relator of its claim against the state of Nebraska for the payment of said premium on said state treasurer's bond, as appears by the pleadings, and as established by the evidence herein. * * *

"That prior to the commencement of this suit a certain creditor of the National Surety Company commenced a certain action against it in Knox county, Nebraska, and caused attachment process to be issued and notice of garnishment under said attachment to be served upon certain officers of the state, to wit, Lee Herdman, director of in-

surance, and the defendant Hall, state treasurer, requiring them to appear and answer in said county, which said action is still pending; that another action was begun by the same creditor of the National Surety Company in Knox county, Nebraska, and prosecuted to judgment against the said National Surety Company and a transcript of the judgment filed in Lancaster county, Nebraska, and garnishment process issued thereon against said Lee Herdman, director of insurance, and the defendant Hall, state treasurer, both personally and in their official capacity; that each of said defendants filed motions to quash the said garnishment process against them in their official capacity, which have been sustained, and each answered personally that he has no funds personally in his possession or under his control belonging to the said National Surety Company, and that said action is still pending, except as indicated by the premises.

"That following the passage of said appropriation act by the legislature of the state of Nebraska, the respondent, William B. Price, auditor of public accounts of the state of Nebraska, in an effort to literally comply with the language of said proviso, issued a warrant for $5,000 payable to Lee Herdman, the said director of insurance, but that the respondent, George E. Hall, state treasurer of the state of Nebraska, to whom said warrant was delivered to be countersigned by him, and given to the said director of insurance, refused to countersign said warrant and still retains possession of the same; and that the money so appropriated by said legislature of the state of Nebraska for the purpose of paying said premium on said state treasurer's bond has never been delivered to said director of insurance, but remains in the treasury of the state of Nebraska. * * *

"That George S. Van Schaick, superintendent of insurance of the state of New York (and rehabilitator of said National Surety company), being mistakenly or erroneously advised as to the reception of said sum of $5,000 by said director of insurance of the state of Nebraska, as

contemplated by the proviso attached to said legislative appropriation and as attempted in the manner heretofore described, brought an action in the district court of the third judicial district of Nebraska against Lee Herdman, director of insurance, to require the latter to account to him for the said $5,000; that subsequently the defendant Hall and the National Surety Company were made parties defendant in said action, though said Hall was never served with summons therein; that Homer L. Kyle, as administrator of the Matthews estate, filed petition of intervention in said action claiming to be a creditor of the National Surety Company and to have an interest in said fund; that thereafter said action was duly dismissed upon motion of plaintiff's attorneys * * * who filed said suit; and that shortly thereafter said intervener, Homer L. Kyle, administrator, caused said action to be reinstated, and said action now remains docketed in this court and pending upon a motion of the said Van Schaick to quash the petition of intervention of said Kyle, administrator, and another motion of said Van Schaick to dismiss said action; that the said Kyle, administrator, however, claims some right and interest in and to said fund by reason of his said intervention; that both the defendant Hall and the said Herdman, director of insurance, duly filed demurrers in said action.

"That as a matter of fact said sum of $5,000 was duly appropriated by said legislature of the state of Nebraska for the purpose of paying the indebtedness of the state of Nebraska to said National Surety Company, and its successor, National Surety Corporation, for the furnishing of said state treasurer's bond by said National Surety Company, and the assumption of liability thereon by the relator, National Surety Corporation, all as hereinbefore set forth; and that said appropriation of $5,000 for that purpose, duly made by said legislature as aforesaid, was for that purpose, namely, for the purpose of paying said premium on said state treasurer's bond, and for that purpose only."

All the foregoing findings are abundantly sustained by the evidence and the questions presented on the appeal have to do mostly with the law applicable to the facts.

Respondents contend that mandamus does not lie, since relator had an adequate remedy at law by appeal from disallowance of its claim, and they refer to section 9, art. VIII of the Constitution, which reads as follows: "The legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor and approved by the secretary of state, before any warrant for the amount allowed shall be drawn. Provided, that a party aggrieved by the decision of the auditor and secretary of state may appeal to the district court." They also call attention to section 77-2607, Comp. St. 1929, passed pursuant to the constitutional provision. The record does not show, however, that the state auditor ever disallowed the claim of the National Surety Corporation or exercised any discretion with regard to it.

Section 14, art. III of the Constitution, provides in part: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." The title of the bill here in question, H. R. 601, Laws 1933, is as follows: "An act to make appropriations for the payment of claims filed against the state of Nebraska in the office of the auditor of public accounts, not heretofore paid, and for which no appropriation has been made; to make appropriations for the payment of miscellaneous claims presented to the legislature, for which no appropriations have heretofore been made; to provide the manner in which certain money so appropriated shall be paid and expended; and to declare an emergency." Laws 1933, ch. 15. An identical title was under consideration in *Weaver v. Koehn*, 120 Neb. 114. The third point of the syllabus announced the rule as follows: "The title of chapter 33, Laws 1929, in so far as it relates to the appropriation of $260,111.34 for reimbursement of depositors in banks, *held* insufficient to disclose the nature, purpose, and effect of the appropriation referred to in the body of the act." We hold that the title to H. R.

601 is sufficient to uphold the appropriation, but not sufficient to uphold the limitation attempted to be placed upon it in the proviso.

Appellants further contend that the relator cannot claim under a statute and at the same time attack some of the provisions of the same statute. The general rule is stated in 59 C. J. 642, and in *State v. Howard,* 96 Neb. 278, and *State v. Stuht,* 52 Neb. 209. In the latter case the general rule was laid down as follows: "If a portion of a legislative act is unconstitutional and it can be separated from other portions of the act and the latter enforced independent of the former, and it further appears that the unconstitutional part did not constitute such an inducement to the passage of the other parts of the law that they would not have been passed without it, the former may be rejected and the latter upheld."

It is quite apparent that the unconstitutional part of the appropriation can be separated from the other portions and did not constitute such an inducement to the passage of the other parts of the law that they would not have been passed without it. In fact, the appropriation was for a legitimate claim against the state, so recognized by all the parties to this proceeding, and the legislature had no duty in connection with it other than to appropriate the money for the payment of the claim.

The supreme court of the United States has held: "Every state has jurisdiction to determine for itself liability of property within its territorial limits to seizure and sale under process of its courts." *Clark v. Williard,* 294 U. S. 211.

This was a controversy which arose in Montana with reference to some personal property of the Federal Surety Company of Davenport, Iowa. One Clark had been appointed liquidator of the Iowa company in Iowa and was attempting to reduce the assets in Montana to his possession. The defendants were judgment creditors in Montana.

On return of this case to Montana after the supreme

court opinion, the Montana supreme court determined by a divided court that it was the policy of that state to permit attachment of the property in Montana, and that such doctrine was not contrary to the authority of *Blake v. McClung,* 172 U. S. 239, *id.* 176 U. S. 59, because, while it is not within the power of the state to grant a preference or priority to local creditors over those from other states, by reason of the declaration of section 2, art. IV of the federal Constitution, providing that "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," the policy of permitting attachments in the state was applicable to both nonresident and resident attaching creditors, and therefore not inimical to the constitutional provision just quoted. The Montana court in *Mieyr v. Federal Surety Co.,* 97 Mont. 503, held that the policy of the state with reference to preferences granted to attaching creditors is binding upon the courts, and further held in regard to such matter: "What is the 'public policy' of a state and what is contrary to it is not to be measured by the private convictions or notions of the persons who happen to be exercising judicial functions, but by reference to the enactments of the lawmaking power, and, in the absence of them, to the decisions of the courts. When, however, the legislature has spoken upon a particular subject and within the limits of its constitutional powers, its utterance is the public policy of the state." (34 Pac. [2d] 982.)

An extended discussion of the public policy of Nebraska is scarcely necessary, in view of the fact that the very first ground for attachment in this state is that the defendant is a foreign corporation. Our courts have also uniformly sustained the right to attach. Therefore it would seem to be the established public policy of Nebraska to permit sequestration of property of nonresidents present in the state for the satisfaction of debts, regardless of the fact that proceedings to rehabilitate the debtor company have been perfected in the parent state. Neither does the rule of comity require such rehabilitation proceedings in New

York to be given effect in Nebraska. In the Montana case above referred to, *Mieyr v. Federal Surety Co.*, it was held: "Rights and remedies of property are governed by laws of state in which it is situated, and statutory assignment to liquidator can only be given force in other states on ground of comity and not by constitutional mandate. 'Comity' is neither a matter of absolute obligation on the one hand nor of mere courtesy and good-will upon the other, but it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws. Comity involves reciprocity." (34 Pac. [2d] 982.)

While these authorities establish the general principle, they do not throw any light on the specific question before us, which is whether in this particular case any steps have been taken or perfected by creditors which give them a greater right to the $5,000 than relator corporation.

The provision of the appropriation act is not only contrary to our Constitution because the subject thereof is not mentioned, but it provides no method to apportion the fund among the creditors of the National Surety Company, and there does not seem to be any method by which the various creditors or any single creditor can establish a claim to the fund. If the intention of the legislature was, as appears probable, that the fund should be exclusively for Nebraska creditors, then it is in violation of section 2, art. IV of the federal Constitution, which provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." If the intention was to permit all creditors wherever located to share, then the administrative cost of distributing the amount would seem to be excessively large.

The only remaining method for any creditor to get the fund would be through garnishment proceedings. The general rule is that a sovereign government cannot be re-

quired to answer as garnishee. Furthermore, garnishment proceedings were instituted before the district court in Lancaster county. .The state treasurer and director of insurance in their official capacity filed a motion to quash the garnishee summons, and answered that they had no money of the surety company in their possession personally. The motion to quash was sustained, and it does not appear that any appeal has been prosecuted from such order of the court. This ruling of the district court seems to be in accordance with law.

Sections 20-1012, 20-1013, Comp. St. 1929, do not authorize garnishment of the state in proceedings of this kind. This law, which was passed in 1925, was "An act to provide for garnishment of officers and employees of the state of Nebraska or any county," etc. Laws 1925, ch. 58. The law expressly says that it shall apply "only in case it is sought to hold and apply the earnings of such officers and employees which earnings have been earned by personal services rendered to the state or to any county," etc. Comp. St. 1929, sec. 20-1012. See in this connection *Home Savings & Loan Ass'n v. Carrico*, 123 Neb. 25. Furthermore, there is nothing in the record to justify holding this fund, even though garnishment were duly authorized, because the claim had been assigned to the National Surety Corporation long before institution of any of the proceedings herein. It is true that the National Surety Corporation is merely the successor of the National Surety Company and as to fees already earned the assignment under circumstances here existing might not be good against creditors, but it will be noted from the foregoing statement of facts that the bond was for the two-year term beginning January 5, 1933, and that the rehabilitation was complete and the assumption of liability under the state treasurer's bond by the new company was begun at midnight of April 30, 1933. Therefore all premiums earned. after that time were the property of the successor corporation. This assumption of liability was open and acquiesced in by the state. As to this phase of the case we cannot see that the

creditors are any better off than if the bond had been canceled and rewritten in the National Surety Corporation, or in some entirely different company. The new company would be entitled to the premium from and after midnight April 30, 1933, to the end of the two-year period in any event. Appellants contend that the whole scheme is fraudulent, but it was sustained by the highest court in New York state. There is no evidence of fraud outside of the mere recital of what was done, and the plan was not inherently fraudulent, especially as to this fund, only a sixth of which was earned at the time. It is true that its effect has been and will be to delay the creditors of the National Surety Company in the collection of their claims, but the moratorium acts of the various states do that and have been sustained by our national supreme court. *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U. S. 398. The rehabilitation of the National Surety Company was an emergency act, beneficial alike, it seems to us, to the company and to its creditors and patrons. While a federal judge in *Ulmen v. National Surety Co.*, 4 Fed. Supp. 194, severely criticized the plan, our opinion is that it was an honest effort to do the best under the circumstances for all concerned. It would unduly extend this opinion to go into the details of the plan. A short quotation from the opinion of Valente, J., supreme court, county of New York, when the rehabilitation plan was submitted to that court, sufficiently presents the matter. He said in part:

"This memorandum would be unduly lengthened if a discussion were had of the obvious staggering losses which liquidation would cause and the tremendous inconveniences and losses it would saddle upon trustees, administrators, and others who are holders of bonds of the National Surety Company. If liquidation in the net result yielded more than the adoption of the plan of rehabilitation, inconvenience and temporary confusion might have to be overlooked, but on the face of it the result would be quite the reverse.

"The destruction of the good-will by liquidation is not

the only element of loss. The item of $12,000,000 assets transferred to the new corporation which it is claimed by the objector would inure to the old in the event of liquidation is really confined to the item of two to three million semiliquid assets turned over to the new company. The $5,000,000 collateral of the reconstruction finance corporation would have to be returned to that corporation and it is doubtful whether the liquidation of the collateral in the hands of that corporation would yield the amount of the debt to it. Under present conditions it might even be insufficient to cover the debt. The $4,000,000 of premiums to be collected would also vanish into thin air; so that the net result of liquidation would be scattering, as compared to the probability of substantial recoupment by the creditors under the present plan."

At another place in his opinion he calls attention to the fact that the good-will, a valuable asset to a going-concern, would be destroyed by liquidation.

While every state has jurisdiction to determine for itself liability of property within its territorial limits to seizure and sale under process of its courts, the courts of Nebraska will hardly go so far as to say that premium earned by a successor of the debtor company can be held for the debts of the latter where all the proceedings for the organization of the successor company and the taking over of the assets of the debtor company have been fully approved by the courts of the parent state and acquiesced in by our own state officers who continued under the bond after the new company had assumed liability thereunder. Let appellants remember that, if there had not been rehabilitation in some form and the National Surety Company had failed, the liability of the state for premium would have been only the premium earned, and not the $5,000 for the full two-year period.

In the Montana case the levies were made long before the Iowa liquidator made any move to reduce the property in question to his possession. He based his right entirely on his position as statutory liquidator of the Iowa com-

pany. There was, of course, no claim of an independent right such as we have here where the reorganized company actually earned most of the premium in dispute.

The judgment of the district court was right and the mandamus may issue.

AFFIRMED.