BEATRICE B. WHITNEY, APPELLANT, v. H. D. PENROD ET AL., APPELLEES.

32 N. W. 2d 131

Filed April 28, 1948. No. 32331.

*Burbridge & Burbridge* and *Clay C. Rogers,* for appellant.

*Brown, Crossman, West, Barton & Quinlan, John R. Cockle,* and *Rosewater, Mecham, Shackelford & Stoehr,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

Messmore, J.

This is an action at law to recover damages for personal injuries received by the plaintiff while she was riding as a guest in an automobile driven by the defendant Morris E. Whitney when it collided with a truck owned by the defendant H. D. Penrod and driven by an employee. At the conclusion of the plaintiff's evidence, both defendants moved for a directed verdict or, in the alternative, dismissal of the plaintiff's case. The trial court sustained both motions and dismissed plaintiff's case. Upon the overruling of motion for new trial, the plaintiff appealed.

The amended petition of the plaintiff alleged in detail certain acts of negligence on the part of the defendants.

The amended answer of the defendant Penrod alleged certain acts of negligence committed by the defendant Morris E. Whitney which constituted the direct and proximate cause of the accident and the injuries complained of by the plaintiff, and further alleged that the defendant Penrod's driver was confronted with an emergency created solely by the negligence of the defendant Morris E. Whitney.

The defendant Whitney's amended answer denied generally the allegations of the plaintiff's amended petition; admitted the charges of negligence made by the plaintiff against the defendant Penrod, and that the plaintiff was riding as a guest in Whitney's automobile at the time of the collision; and charged the plaintiff was guilty of negligence directly contributing to cause the accident and that said negligence of plaintiff as a matter of law was more than slight.

Plaintiff's reply was a general denial.

We refrain from setting out the acts of negligence charged in the respective pleadings above, deeming it more advisable to discuss the same in the opinion with reference to the facts as shown by the record.

At the outset, it may be well to state that the plaintiff pleaded in her amended petition certain sections of

the statutes of the state of Missouri and decisions of the Supreme Court and the Court of Appeals of that state, pertinent to the factual situation in the instant case.

The defendant Whitney pleaded the guest statute of this state, section 39-740, R. S. 1943, which provides in part and substance that the owner of a motor vehicle shall not be liable for damage to a guest unless such damage is caused by the gross negligence of the owner or operator in the operation of such motor vehicle. The contention is that to enforce the Missouri law, which permits a guest in an automobile case to recover against the host for failure of the host to exercise the highest degree of care, would be in violation of the law of Nebraska and contrary to the public policy of this state. It is noted, such defendant does not brief this phase of the case. We are not prepared to say he has definitely abandoned the contention, so we determine it.

In Skillman v. Conner, 38 Del. 402, 193 A. 563, it is said: "This rule is aptly and concisely stated by Professor Beale in his Work on Conflict of Laws, (3 Beale's Conflict of Laws, 600). He says: 'It has now become axiomatic that substantive matters are governed by the foreign law and that procedural, or, as it is more usually expressed, matters relating to the remedy, are governed by the law of the forum.' * * * It, therefore, seems to be well settled that a mere difference between the laws of the two States, whether in its statutory provisions, or otherwise, will not necessarily render the enforcement of a cause of action arising in one State, contrary to the public policy of another State. Loucks v. Standard Oil Co., 224 N. Y. 99, 120 N. E. 198; Reynolds v. Day, 79 Wash. 499, 140 P. 681, L. R. A. 1916A, 432; Chubbuck v. Holloway, 182 Minn. 225, 234 N. W. 314, 868; Herrick v. Minneapolis & St. L. Ry. Co., 31 Minn. 11, 16 N. W. 413, 47 Am. Rep. 771; 3 Beale's Con. of Laws, 1651; Conflict of Laws, Restatement, 732; Goodrich on Con. of Laws, § 96."

"In several cases where, under the law of the forum,

gross negligence of the host is the sole criterion of liability to a guest, the courts have taken jurisdiction and have given effect to the law of the state in which the negligent act took place where ordinary negligence is sufficient for a host's liability to a guest, inferentially leading to the conclusion that such differences with respect to the degree or criterion of negligence are no ground for refusal to entertain jurisdiction." 11 Am. Jur., Conflict of Laws, § 183, p. 496. See Collins v. McClure, (Ohio App.) 49 N. E. 2d 181. See, also, Loranger v. Nadeau, 215 Cal. 362, 10 P. 2d 63, 84 A. L. R. 1264; Caine v. St. Louis & S. F. R. R. Co., 209 Ala. 181, 95 So. 876, 32 A. L. R. 793.

We conclude the defendant Whitney's contention in such respect is without merit.

The trial court having dismissed the plaintiff's cause of action in behalf of both defendants, we are required to analyze the evidence to determine whether or not it is sufficient under the law to have warranted submission of the plaintiff's case to the jury. We set forth a résumé of the pertinent and material evidence as disclosed by the record.

The record discloses that the plaintiff is a sister-in-law of the defendant Morris E. Whitney, and the wife of his brother Elmer Whitney. Morris E. Whitney is the owner of a maroon-colored Chevrolet. The defendant Penrod is the owner of a Chevrolet, ton and a half tractor-trailer truck, at the time of the accident driven by James Stephens, an employee. On September 26, 1945, the plaintiff, her husband, two of their children, and Morris E. Whitney started on a trip to Waynesboro, Mississippi. They left Omaha shortly after 11 a. m. Morris E. Whitney drove the car and exercised exclusive control over it. The plaintiff was seated to his right, her husband to her right in the front seat, and the two children occupied the back seat. The party passed through Oregon, Missouri, shortly after 2 p. m., to a point approximately four miles east thereof where a

filling station is located. They proceeded east on highway U S 275. This highway is 18 feet in width, paved, with a black line running through the center of it, dividing it into traffic lanes for east and west travel. The evidence and exhibits show the highway to be approximately level east of the filling station with a clear view for a quarter of a mile east and west; also show a grade, and at the top thereof the highway slopes to the east, then there appears a slight incline and a drop towards an incline a little steeper.

The owner of the filling station testified that he saw the Whitney car pass the filling station proceeding east at an estimated speed of 50 miles an hour. A few minutes prior thereto, Mr. Guy, driving a Model A Ford car, stopped at the station and before the Whitney car passed had left the station driving east on highway U S 275. After the Whitney car passed the filling station, the driver honked his horn for the right-of-way over the Ford car which was ahead of him at the hill. The Whitney car at that time was approximately 200 yards from the crest of the hill, or 200 to 300 yards distant from the filling station. After the honking of the horn he heard the setting of brakes which attracted his attention. He observed the Whitney car in the south lane of the highway, proceeding east over the crest of the hill until it got out of view. A truck was coming over the hill proceeding west. He figured that something might happen, and immediately drove east of the filling station and parked his car near the scene of the accident. The truck was headed west on the south shoulder of the highway and the right rear wheels of the trailer were on the pavement. A woman was lying unconscious about two feet north of the center line of the pavement. The Whitney car was standing at an angle on the pavement, with the front part a little to the north of where she was lying. There was glass, dirt, and water covering a radius of five or six feet in the center of the highway, with a small portion

of the debris to the south of the center thereof.

On cross-examination, this witness testified the accident took place one-eighth of a mile east of the filling station, 60 or 70 feet east of the brow of the hill. The Whitney car was facing southwest with part of it on the north shoulder of the highway. The truck was sitting parallel with the pavement.

The plaintiff testified, in substance, that she recalled passing through Oregon, Missouri, and seeing an old model car 150 to 175 feet ahead of the Whitney car on the same side of the highway going in the same direction. The Whitney car was proceeding at a speed of between 50 and 60 miles an hour. Morris pulled over to the north lane of the highway with two wheels of his car in that lane, far enough to see around the Ford, for the purpose of passing it. She saw a truck proceeding west, coming toward the Whitney car. She screamed to Morris and told him not to pass the Ford. He then immediately pulled his car back into the south lane behind the Ford car, applying his brakes and decreasing his speed. She next observed the truck on the north bank. She thought it was going to turn over. It jackknifed across the highway on the pavement directly in front of the Whitney car when the Whitney car was on its own side of the highway. It was at the time the Whitney car was getting close to the truck that she yelled. It appeared to her that they were going through the cab of the truck. When Morris pulled the car sharply to the left, that is the last she remembered.

On cross-examination she testified that she saw the truck leave the highway and pull out on the north side thereof onto the dirt shoulder. The back right fender of the truck hit the Whitney car when Morris turned it to the left. The truck tilted after it got on the embankment, jackknifed and came across the pavement like a streak, with the cab of the truck pulled across in front of the Whitney car.

The plaintiff's husband testified that on May 10, 1947,

he went to the scene of the accident for the purpose of taking measurements from different points and dia-graming the accident. The road conditions at the time were identical with the conditions that existed at the time of the accident, that is, it was a clear day and the pavement was dry. At the point of impact the shoulder on the north side of the highway is seven feet wide. The banks on the same side are 10 to 11 feet in height, varying slightly.

He further testified that proceeding from the filling station east to the point of impact, they were driving 50 to 55 miles an hour. When they arrived at a point where the highway slopes to the east, and proceeded over the point of the hill, a Ford car was about 200 feet ahead of the Whitney car, proceeding slowly in the same direction. Morris partially pulled to the left side of the highway, with two wheels across the center line, with the thought of passing the Ford. He raised his speed to approximately 60 miles an hour, and proceeded in such manner for a distance of probably 50 feet when the plaintiff yelled at him and he pulled back behind the Ford, started to apply his brakes and reduced his speed to 30 or 40 miles an hour. This witness saw the truck at the time Morris pulled his car to the left, im-mediately after coming to the crest of the hill. The truck was almost to the culvert, or slightly east of it, which is at the bottom of the hill. The highway runs east and west and curves slightly toward the north at the bottom of the hill, as shown in the exhibits. The distance from the culvert to the point of impact is 441 feet. The distance from where he first saw the truck to the point of impact is 315 feet. Evidence of this witness as to the rate of speed the truck was travel-ing was stricken for lack of proper foundation. The measurements made by him, and the position of the cars and distances prior to the time of the impact, in-dicate the truck was traveling at a fast rate of speed. He further testified that the truck continued on the

highway for a short distance on the paving and then pulled off onto the north shoulder of the road, without cutting its speed. The Whitney car pulled back in behind the Ford and endeavored to stop. The truck hit the embankment and climbed up a distance on it. The witness thought the truck would turn over, and in the next instant it came across the highway between the Ford and the Whitney car. The right front fender of the Whitney car hit the right front fender of the truck. The trailer of the truck was wider than the cab, and the next bad impact was when the Whitney car hit the trailer, going along the side of it almost to the end of it. The impact took place approximately in the center of the highway. He did not know whether it was two feet north of the center line or not, but the Whitney car swung sharply to the left in an endeavor to avoid hitting the truck when it came almost directly across the highway. When the truck came off the embankment it headed almost directly south on the highway, a distance of 16 feet, completely blocking it. After the accident his wife was unconscious and lying slightly to the north of the center line of the highway, about four feet from the Whitney car. Exhibits appearing in evidence show demolishment to the right side of the Whitney car and damage to the interior. He observed debris in the center of the highway, some of which was on both sides thereof, covering a distance of 15 to 18 feet, scattered in an east and west direction. The truck and trailer were approximately 38 to 40 feet in length, and the Whitney car was 16 feet in length. The Whitney car had not caught up with the Ford car. He observed skid marks approximately 38 to 40 feet in length on the south side of the highway, obviously made by the Whitney car when the brakes were applied.

On cross-examination this witness testified that the filling station is 378 feet distant from the brow of the hill, and 680 feet distant from the point of impact. When Morris turned out to pass the Ford, he traveled for a

distance of approximately 50 feet over the center line on the north side of the pavement. Taking the total distance the Whitney car traveled from the time this witness first saw the truck as 315 feet, Morris used up perhaps 100 feet of this space in pulling out to the left to pass the Ford car and pulling back in behind the Ford car, leaving 215 feet, with the Ford car approximately 40 to 50 feet ahead of the Whitney car at the time of the accident. This would leave a distance of 150 feet he traveled after applying the brakes. When the truck pulled off the highway it was about the same distance east of the Ford as the Whitney car was west of the Ford. The truck traveled 441 feet while the Whitney car traveled 315 feet. The driver of the truck did not slow down. The truck completely blocked the highway; there was no opening, and Morris turned to the left in an endeavor to miss the truck. At no time prior to the collision between the truck and the Whitney car when Morris turned sharply to the left to avoid a collision, was his car on the north side of the center line of the highway.

There is a controversy in the cross-examination of this witness as to the distance between the Whitney car and the truck when the truck pulled off onto the north shoulder of the road, and as to whether or not the Whitney car was proceeding north across the center of the highway at the time the truck turned to the north onto the shoulder of the highway. The distance between the Whitney car and the truck, from the time that this witness observed the truck, is in conflict, as is the testimony with reference to how far behind the Ford the Whitney car was, and how close it got to the Ford.

The appellant contends that the evidence justifies a submission of the case to the jury on the question of the negligence of the defendant Penrod.

In this connection, sections 8383 and 8385, Revised Statutes of Missouri, 1939, insofar as applicable to this case, are as follows:

"Sec. 8383. Every person operating a motor vehicle

on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person, * * *."

"Sec. 8385. Every person operating or driving a vehicle upon the highways of this state shall observe and comply with the following rules of the road: * * * (c) An operator or driver meeting another vehicle coming from the opposite direction on the same highway shall turn to the right of the center of the highway so as to pass without interference. * * * (e) An operator or driver of a vehicle overtaking another vehicle going in the same direction and desiring to pass the same shall pass to the left of the vehicle so overtaken: *Provided,* that the way ahead is clear of approaching traffic, but if the way is not clear he shall not pass unless the width of the roadway is sufficient to allow his vehicle to pass to the right of the center thereof in the direction in which his vehicle is moving; * * *."

The negligence charged against the driver of the Penrod truck may be summarized as follows: Failing to keep a proper lookout and to keep the truck under proper control; operating at a high and dangerous rate of speed; and causing and permitting the truck to turn sharply and suddenly across the center of the highway onto the south side thereof, directly in the path of the automobile in which the plaintiff was riding, although he saw, or in the exercise of the highest degree of care could have seen, the automobile in which the plaintiff was riding in a position of peril and danger of being struck by the truck, in time thereafter by the exercise of the highest degree of care on his part, to have stopped the truck or slackened the speed thereof, which he failed to do to avoid the collision.

The following cited decisions reflect the duty of a motorist under the sections of the statutes above cited.

"It is the duty of a driver of an automobile to keep a

lookout on the highway in the direction the car is going, in such manner as to see a condition which a person in the exercise of due care for his own safety and that of others would have seen under similar circumstances. * * *

"The operation of an automobile, under Section 7795, Revised Statutes 1929, requires the driver to exercise the highest degree of care, and injury to a guest by failure to exercise such care renders the operator liable." Kaley v. Huntley, 333 Mo. 771, 63 S. W. 2d 21.

In the above-cited case it is said on page 780: "The language is perfectly plain, and sweeping. The scope of the statute was well expressed in Gude v. Weick Undertaking Co., * * * 322 Mo. 778, 783, 16 S. W. (2d) 59, thus:

" 'It is manifest that the statute itself does not prescribe any different degree of care on the part of the operator for different occasions and places or under different circumstances. It is made the duty of every person operating a motor vehicle to exercise the highest degree of care. Where? Everywhere on the highways. When? At all times, because no exceptions are authorized. The words (are) "so as not to endanger the property of another or life or limb of any person," ' " etc.

"It is reasonable to assume that had it been the legislative purpose to except from the general rule of highest degree of care operators as hosts operating automobiles in gratuitous transportation of guests a provision in the laws would have been framed to accomplish that end."

The case of Cox v. Reynolds, (Mo. App.) 18 S. W. 2d 575, holds: "Ordinary care upon the part of the driver of an automobile, however, requires him at all times and under all circumstances to anticipate and expect the presence of others on the highway, and to keep his machine always under control so as to avoid collision with them." Cases cited.

In the same opinion it is said: "We are in accord with the ruling that the test of control is the ability to stop quickly and easily, and that, when this result is not accomplished, an inference is permissible that the car

was running too fast, or that a proper effort to control was not made." See, also, LaBanca v. Pundmann, (Mo. Sup. Ct.) 147 S. W. 2d 466; State ex rel. Hauck Bakery Co. v. Haid, 333 Mo. 76, 62 S. W. 2d 400.

Contra to the plaintiff's contention, the defendant Penrod contends that his driver, as shown by the evidence, was confronted with a sudden emergency, and argues that the Ford car was approaching him at a slow rate of speed and the Whitney car was across the center line of the highway north, proceeding at a high rate of speed. The truck driver would not be able to anticipate whether the driver of the Whitney car would proceed to pass the Ford or pull back in behind it. The Whitney car had, at the most, only 200 feet in which to reduce his speed to that of the Ford. The truck driver therefore abandoned the north side of the highway, moving the truck completely off of it to the north shoulder which was seven feet wide and the truck eight feet wide, for the purpose of allowing the Whitney car to pass in safety on the north side of the highway. This defendant contends the law is clear that, where a driver is faced with a sudden and dangerous emergency, his actions thereafter are not to be judged with reference to the high standard of care to which he would be held if no emergency existed, citing Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689, as follows: "Where one driving an automobile is suddenly confronted by an emergency, requiring instant decision, he is not necessarily guilty of negligence in pursuing a course which mature reflection or deliberate judgment might prove to be wrong." See, also, Oakes v. Gregory, 133 Neb. 407, 275 N. W. 607; Moses v. Mitchell, 139 Neb. 606, 298 N. W. 338.

Under the law of Missouri, heretofore set out, the driver of the Penrod truck was required to use and exercise the highest degree of care, and to drive the truck at such a rate of speed so as not to endanger the life or limb of any person. The evidence is sufficient to show that the defendant Penrod's truck was proceeding at a

high rate of speed. The measurements, as previously set out in the résumé of the evidence, so indicate.

In Booth v. Gilbert, 79 F. 2d 790, it is said: "Under Missouri statute test of excessive speed is whether motorist drove in careful and prudent manner exercising highest degree of care with regard to situation and surroundings."

Defendant Whitney makes reference to the following facts: He was driving his automobile over the brow of the hill and saw the Ford ahead of him, on the same side of the highway, moving at a slow rate of speed. He speeded his car up to about 60 miles per hour intending to pass the Ford, pulled to the left of the center of the highway and was confronted by an approaching truck. The plaintiff screamed as she saw the truck. Whitney then pulled back to his right side of the pavement at a distance of approximately 215 feet from the point of the collision. He did not apply his brakes until he came back onto the south side of the pavement back of the Ford. He then applied them, going at a rate of speed of 60 miles an hour. He traveled 100 to 150 feet after applying his brakes and was going at a speed of 40 miles an hour at the time of the impact. The only time he encroached upon the north lane of the highway was when his car was at least 700 feet from the approaching truck, as shown by the measurements in evidence. Both vehicles were on their own side of the road, and Whitney asserts he had the right to presume that they would remain there. In addition, the truck was projected across the highway south, completely blocking it. Defendant Whitney contends that under such evidence he was confronted with a sudden emergency, citing and relying on the same cases on this point as defendant Penrod.

"Where separate independent acts of negligence by different persons combine to produce a single injury, each participant is liable for the resulting damages, although one of them alone might not have caused the injury." McClelland v. Interstate Transit Lines, 142

Neb. 439, 6 N. W. 2d 384. See, also, Rogers v. Brown, 129 Neb. 9, 260 N. W. 794; Andrews v. Clapper, 133 Neb. 110, 274 N. W. 209.

We conclude that the evidence presents a factual situation for a jury to determine as to the degree of negligence of the respective defendants, if any, and as to whether or not a sudden emergency was created, either as to one or the other of the defendants.

The defendant Whitney, in his amended answer, charges the plaintiff with contributory negligence, contending that it is the duty of a guest to warn the host of known approaching danger if there is time and opportunity, citing Kaley v. Huntley, *supra:* "When dangers, which are reasonably manifest are known to an invited guest, confront the driver of a vehicle and the guest has an adequate opportunity to influence the situation for safety, if he sits without warning and permits himself to be driven carelessly to his injury, his negligence will bar recovery."

There is evidence that the plaintiff called the attention of Morris Whitney to the oncoming truck at the time.

In Setzer v. Ulrich (Mo. App.) 90 S. W. 154, it was said that to be guilty of contributory negligence as a matter of law, if the guest knew, or in the exercise of ordinary care would have known, that danger threatened and that the driver was remiss in guarding against it, the guest cannot recover. This is so not because the driver's negligence is imputed to the guest, but because of the guest's own contributory negligence. Burton v. Pryor (Mo. App.) 198 S. W. 1117; Shutz v. Wells (Mo. App.) 264 S. W. 479. But while the law requires the guest to exercise ordinary care and prudence for his own safety, and would not permit him to entrust his safety absolutely to the driver regardless of impending danger or apparent lack of caution on his part, it would not require the guest to use the same vigilance as was required by the driver, and the guest was not under the same obligation to look for danger. The guest necessari-

ly had to rely largely on the driver, having exclusive control of the truck, to exercise the required degree of care in its operation. See cases cited in Setzer v. Ulrich, *supra*. See, also, Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178; Landrum v. Roddy., 143 Neb. 934, 12 N. W. 2d 82.

In the light of the evidence and above-cited authorities, we cannot say as a matter of law that the plaintiff was guilty of contributory negligence.

For the reasons given in this opinion, the judgment of the trial court in taking the case from the jury is erroneous, and the judgment is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED.