LEONARD PORTIS, APPELLEE, V. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, APPELLANT.

62 N. W. 2d 323

Filed January 22, 1954. No. 33410.

*Fraser, Connolly, Crofoot & Wenstrand,* for appellant.

*Robert D. Mullin* and *Robert E. McCormack,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for property damages resulting from a collision between a trailer-tractor unit and a train of the defendant. Issues were made and trial had resulting in a judgment for plaintiff. Defendant appeals. We reverse the judgment and remand the cause with directions to dismiss.

The accident happened at Owatonna, Minnesota. Plaintiff was the owner of the tractor. Union Transfer Company was the owner of the trailer. Its claim is assigned to the plaintiff. Plaintiff sues on the two alleged causes of action. The equipment was driven by an employee of Union Transfer Company. A Minnesota statute provides, in case of accident, that the driver is deemed the agent of the owner. The act of the driver is accordingly here deemed by the parties to be the act of the plaintiff on both causes of action.

Defendant moved for a directed verdict at the close of plaintiff's case and at the close of all the evidence. These motions were overruled. Defendant assigns these rulings, among others, as error.

We consider the evidence as it stood at the close of the trial of the case.

Defendant's tracks run through the city of Owatonna in a northwest-southeast direction and in that direction cut across North Street and Cedar Street slightly west of the intersection of the two streets. North Street runs east and west. Cedar Street runs north and south. The right-of-way is 100 feet wide. Plaintiff's driver ap-

proached the scene of the accident from the west on North Street. From that direction on North Street there is first a standard "cross buck" railroad crossing sign on the right-hand side (or south), then a side track, then the main-line track, then a second side track, and then another "cross buck" sign on the left or north side of the street. The distance between these two "cross buck" signs is stated at about 96 feet.

The distance between the south siding and main track widens slightly to the southeast and is not definitely shown by any testimony. In between these two tracks on North Street and on the right-hand or south side is a pole upon which there was, at the time of the accident, a no-thoroughfare sign, the exact wording being in dispute.

Between these two tracks on the defendant's property to the south of North Street is a driveway called the cut-off road, which runs through to Cedar Street. It was orginally intended for the use of the defendant and the Owatonna Canning Company, and has been and was being used up to the time of the accident by the public to go from North Street to Cedar Street. The canning company's places of business are to the west of the right-of-way on both sides of North Street.

The accident happened on the morning of January 5, 1951. It had been and was then snowing, and snow covered the tracks. The depth of the snow was fixed by plaintiff's witnesses at 8 inches and by defendant's witnesses at 3 to 5 inches.

Plaintiff's driver came to Owatonna to pick up a load of freight for Nebraska. He came east on North Street and stopped at the office of the canning company where he was told to locate the foreman in one of the buildings, which is not definite in the record. He then drove east past the cross buck sign, and saw both of the signs. He crossed the west-side track. He saw a freight car on the track to his right where men were unloading freight into a cannery building. He went to the left of the pole between the west side and main tracks and pulled in to

the right-of-way property. In doing so he followed vehicle tracks leading to Cedar Street that were there in the snow. He stopped in those vehicle tracks so as to leave the equipment almost parallel to the main-line track and with the left-rear end of the trailer fouling the main-line track. The rear end of the trailer was about 20 feet south of North Street. The equipment was about 10 to 15 feet east of the box car to which reference has been made. He cut off the ignition of his motor, put on the emergency brakes, and put the equipment into gear. He got out of the left-hand side of his tractor. Plaintiff's driver testified that he did not see the main-line track. He does not testify as to any investigation as to his location save as to the location in relation to the box car and being south of North Street. He did not testify as to any inquiry made of the men at the box car. The decision to park where he did was his own. He left his equipment and went into one of the buildings of the canning company. In about 4 or 5 minutes while he was still in the building a south-bound passenger train of defendant ran into the trailer unit. The point of impact was the right front of the engine and about 18 inches on the left rear of the trailer. Substantial damage was done.

It is undisputed that this passenger train had a regular stop at Owatonna. The air brakes were applied about half a mile away and the train had slowed down from a speed of 55 miles per hour to about 15 or 20 miles per hour when the collision occurred. Some distance to the west the customary whistle signals were blown. Plaintiff's driver heard the whistle and then the crash. Both the engineer and fireman saw the trailer when about 100 feet north of North Street. Prior to that time a curve in the track interfered and then snow blocked vision when the point of impact might have been visible otherwise. The emergency brakes were applied, the bell was rung, and the tracks were sanded.

The engine stopped about 100 feet east of the point of impact.

Plaintiff argues that because of the use for which the cut-off road was intended and because of the use of the cut-off road by the public he was an invitee and on the premises by permission. We have searched this record for evidence as to the boundaries of the cut-off road. It was somewhere between the main line and west-side tracks. Plaintiff shows only that his driver was on a track that had been used by some one or more vehicles that day. Certainly it cannot be assumed or inferred that the carrier granted or allowed a use of its property which included a right to block movement of trains on its main line.

The plaintiff, as against a motion for a directed verdict, is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. Davis v. Spindler, 156 Neb. 276, 56 N. W. 2d 107.

The Minnesota rule as to contributory negligence pleaded and proven by the defendant here is as follows: If the plaintiff failed to exercise the care that a person of ordinary prudence would have exercised under similar circumstances, he was guilty of negligence; and, if his negligence contributed, proximately, in any degree to the injury, as a cause, he was, in law, guilty of contributory negligence, and cannot recover.

The above rule is taken substantially from the opinion in Eichhorn v. Lundin, 172 Minn. 591, 216 N. W. 537. In the body of that opinion the court makes this statement also: "There are two necessary elements in contributory negligence: First, a want of ordinary care; and second, a causal connection between plaintiff's conduct and the accident. The rule is that a plaintiff's negligence is sufficient to bar a recovery if it proximately contributes to the result in any degree."

The Minnesota court in Carlson v. Naddy, 181 Minn.

180, 232 N. W. 3, citing the Eichhorn case, held: "The question is not as to the amount of a plaintiff's negligence, if any, but whether, if present at all, it contributed as a cause proximately to the result."

Under these circumstances, the cause of action having arisen in Minnesota, we recognize and follow the Minnesota rule as to contributory negligence. Whitney v. Penrod, 149 Neb. 636, 32 N. W. 2d 131; Scott v. Scott, 153 Neb. 906, 46 N. W. 2d 627, 23 A. L. R. 2d 1431; Smith v. Brooks, 154 Neb. 93, 47 N. W. 2d 389.

Tested by the above rules it is patent that plaintiff's driver, under the circumstances which he relates, exercised a want of ordinary care in parking where he did and leaving the tractor and trailer unattended; that that want of care continued to the time of the accident without intervening event or condition altering it; that there was a causal connection between the conduct of plaintiff's driver and the accident and that it proximately contributed as a cause to the result; and that the Minnesota rule bars a recovery.

Plaintiff, however, denying his driver was guilty of any negligence which proximately contributed to the cause of the collision, argues that even assuming initial negligence it was not continuing and hence the doctrine of the last clear chance should be applied. Defendant argues that the Minnesota rule on last clear chance applies and that the Minnesota rule is less liberal to the person invoking it than is the Nebraska rule. Plaintiff argues that the Minnesota rule was not timely presented and hence we should follow the Nebraska rule. We need not determine this question because it is clear that the Nebraska rule cannot be invoked under the circumstances here.

Plaintiff relies here on our decision in Whitehouse v. Thompson, 150 Neb. 370, 34 N. W. 2d 385. There we held: "When the negligence of the party seeking to invoke the last clear chance rule is active and continuous as a contributing factor up to the time of the injury, the last

clear chance rule has no application." See, also, Carter v. Zdan, 151 Neb. 185, 36 N. W. 2d 781; Bush v. James, 152 Neb. 189, 40 N. W. 2d 667.

Plaintiff contends that his negligence, if any, was not continuing and relies on Whitehouse v. Thompson, *supra*. There we found that the plaintiff was negligent in driving his car to the place near the tracks. At that point the car became lodged in a water drain in such a manner that the icy condition of the street prevented its removal under its own power. We held that that fact was an "intervening condition" which imposed new duties on the parties irrespective of prior negligence and that the last clear chance doctrine applied. But here there was no new or intervening condition which made it impossible for plaintiff's driver to move the tractor and trailer to a place of safety. The act of plaintiff's driver in leaving the trailer and tractor unattended where he did is not a new or intervening condition. For anything that appears in this evidence plaintiff's driver was in control of the situation.

It necessarily follows that the doctrine of the last clear chance has no application here.

The trial court erred in overruling the motion to dismiss. Its judgment is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.