MINNIE KINDLER, APPELLANT, V. CARROLL KINDLER, APPELLEE.
No. 34611.
MINNIE KINDLER, APPELLANT, V. MARGUERITE M. MOREHOUSE, APPELLEE.
No. 34612.
98 N. W. 2d 881

Filed October 30, 1959.

*McGowan & Troia,* for appellant.

*Spear, Lamme & Simmons,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

These two appeals have been consolidated by stipulation of counsel for the purpose of briefing, argument,

and disposition by this court in one opinion because the issues are substantially identical.

The question involved is whether or not defendants, Carroll Kindler and Marguerite M. Morehouse, who are now residents of Dodge County and the surviving joint tenants of Lloyd C. Kindler, who died a resident of Cheyenne, Wyoming, where his estate is being administered and where separate joint tenancies with right of survivorship were created and enforceable, are liable under section 30-624, R. R. S. 1943, to plaintiff, Minnie Kindler, as a creditor of the deceased joint tenant, Lloyd C. Kindler.

The cases were argued and submitted to the trial court on the pleadings and separate stipulations which appear in the bill of exceptions. Thereafter, the trial court rendered separate judgments in each case, which found and adjudged the issues generally in favor of defendants and dismissed plaintiff's petitions at costs of plaintiff. Plaintiff's motions for new trial filed in each case were overruled, and she appealed, assigning in effect that the judgments were not sustained by sufficient evidence or were contrary to law. We do not sustain the assignment.

In that connection, plaintiff's theory was that she was entitled to recover because section 30-624, R. R. S. 1943, enacted as L. B. 197 in 1955, did not purport to impose any lien or encumbrance on the jointly-owned property itself but simply imposed personal liability on defendants as surviving joint tenants for the debts of the deceased joint tenant, under conditions stated therein. Plaintiff so argues, notwithstanding the admitted fact that the joint tenancy contracts were created and enforceable in Wyoming where, under the law of that state, defendants held and would take the whole of the joint tenancy property clear and free of all claims of creditors of the deceased joint tenant.

The relevant and material facts, and the applicable laws of Wyoming as well, were admitted in the stipula-

tions of the parties. The agreed facts are in substance as follows: Plaintiff, Minnie Kindler, was the wife of Lloyd C. Kindler until March 23, 1934. At that time, a decree of divorce rendered in Douglas County, Nebraska, ordered and adjudged that Lloyd C. Kindler, hereinafter generally called Kindler, should pay $5 per week until further order of the court for the use, support, and maintenance of plaintiff and her minor child, then 20 months of age. Kindler died in Cheyenne, Wyoming, on June 11, 1957, where he had been a resident for several years and where his estate is being administered. During his lifetime, Kindler made certain payments pursuant to the terms of the divorce decree, but he was delinquent in certain payments, which, together with interest, exceeded $6,931 due and owing plaintiff on the date of the stipulations. The record is silent on whether or not, during the lifetime of Kindler, plaintiff ever attempted to collect her judgment or any part thereof from him by the use of remedies provided by law for such purpose.

On December 27, 1952, Kindler opened a checking account in the American National Bank at Cheyenne, Wyoming, naming himself and defendant, Carroll Kindler, as owners in joint tenancy thereof with right of survivorship. On June 11, 1957, the date of Kindler's death, there was $904.40 in said account, and Kindler and defendant, Carroll Kindler, were the owners in joint tenancy with the right of survivorship of said checking account during all the period between December 27, 1952, and June 11, 1957, inclusive, although none of said funds were deposited or contributed by said defendant. Also, on May 4, 1956, Kindler opened a savings account in the First Federal Savings and Loan Association at Cheyenne, Wyoming, naming himself and defendant, Marguerite M. Morehouse, as owners in joint tenancy with right of survivorship. On the date of Kindler's death, there was $6,004.57 in said account, and Kindler and defendant were the owners in joint tenancy with the

right of survivorship of said savings account during all of the period between May 4, 1956, and June 11, 1957, inclusive, although none of said funds were deposited or contributed by said defendant.

Except for the checking account and the savings account aforesaid, there was not sufficient other property standing in the name of Kindler at the time of his death to pay the debt owing by him to plaintiff, and no payments or property have been given to plaintiff in Kindler's behalf since his death.

It was agreed that at the time of Kindler's death section 35-148, Compiled Statutes of Wyoming, 1945, dealing with banks and banking, was in full force and effect, and provided in part that: "When a deposit has been made or shall hereafter be made in the name of two (2) persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof, or interest or dividends thereon, may be paid to either of the said persons, whether the other be living or not, and the receipt or acquittance of the person so paid shall be valid and sufficient release and discharge to the bank for any payment so made. This section shall apply to all banking institutions, including national banks, within this state." It was also agreed that: "Under the common law in effect in Wyoming at the time of" Kindler's death, "the surviving joint tenant of a checking account in a bank would take the account clear and free of all claims of creditors."

It was further agreed that at the time of Kindler's death, section 36-108, Compiled Statutes of Wyoming, 1945, dealing with building and loan associations, was in full force and effect, and provided in part that: "Any association may issue shares to or in the name of two (2) or more persons, whether husband or wife or otherwise, withdrawable by any one of such persons, and the receipt or acquittance of any one of such persons shall be valid and sufficient release and discharge to the association for such withdrawals, regardless of the

death or disability of any other such joint shareholder." It was also agreed that: "Under the common law in effect in Wyoming at the time of" Kindler's death, "the surviving joint tenant of a savings account in a savings and loan association would take the account clear and free of all claims of creditors."

Whether the funds involved are still in Wyoming or have been expended or removed to Nebraska or elsewhere is not shown by the record, but we deem that immaterial here. See, Restatement, Conflict of Laws, § 260, p. 343; 11 Am. Jur., Conflict of Laws, § 71, p. 356.

Section 30-624, R. R. S. 1943, provides: "Upon the death of either or any of the joint owners of real or personal property in joint tenancy, with right of survivorship, the surviving joint owner or owners shall be liable for the debts and obligations of the deceased joint owner or owners under the following conditions:

"(1) Unless a settlement is made with the surviving joint owner or owners, a creditor or personal representative of the deceased joint owner shall institute an action in a court of competent jurisdiction, within three months after the death of the deceased joint owner, against the surviving joint owner or owners setting forth such claim;

"(2) The surviving joint owner shall be liable to the creditors or personal representatives of the deceased joint owner only to an amount equal to the value of the amount contributed to the jointly owned property by the deceased joint owner, to pay lawful debts and obligations, but subject to all homestead and legal exemptions in such decedent's jointly owned property; and

"(3) In any action instituted by a creditor or personal representative of such deceased joint owner, as specified in subdivision (1) of this section, the person instituting such action shall allege and prove that there is not sufficient other property standing in the name of the deceased joint owner at the time of his death subject to the payment of said debts and obligations;

Provided, that if no petition is filed in court to provate the deceased owner's estate, within thirty days from the date of his death, there shall be a presumption of evidence as proof of the allegation that is necessary and required, by subdivision (1) of this section in plaintiff's petition, which presumption shall not be evidence in any other cause."

The title of said act, same being Chapter 110, Laws of Nebraska, 1955, reads: "AN ACT relating to decedents' estates; to make the surviving joint owner or owners of jointly held real or personal property liable for the debts and obligations of the deceased joint owner or owners within the limitations and under the conditions prescribed; to provide for the institution of an action as prescribed in regard thereto; to provide for allegations and proof; and to provide presumptions, as to such action only, as prescribed."

The act is peculiar to Nebraska. Counsel for the parties have cited no similar statutes existing in any other state, and we have found none. In DeForge v. Patrick, 162 Neb. 568, 76 N. W. 2d 733, which involved joint tenancies with right of survivorship to real property and a checking account in this state and claimed liability for the debts and obligations of a deceased joint tenant, we mentioned the act. However, we refused to apply it as sought by plaintiff therein, for the reason in substance that the conveyances were contractual and it was not a case involving debts existing at the time of the conveyance nor of contingent liabilities then in being, and there was no competent evidence that the conveyances were made with intent to hinder, delay, or defraud expected creditors.

Here, the Wyoming joint bank account was created in 1952, when a part of plaintiff's judgment may have been unpaid, but before section 30-624, R. R. S. 1943, was enacted by the Legislature of Nebraska in 1955. Here, the Wyoming joint savings account was created in 1956 when a part of plaintiff's judgment was unpaid,

but soon after section 30-624, R. R. S. 1943, became effective in Nebraska. However, there was no such statute existing in Wyoming which could, upon any theory, become a part of or control the joint tenancy contracts here involved, and there is no competent evidence from which it could be reasonably concluded that such joint tenancy contracts were made with any intent to hinder, delay, or defraud either expected or existing creditors.

In DeForge v. Patrick, *supra*, we concluded that section 30-624, R. R. S. 1943, did not abolish joint tenancies with right of survivorship in this state. Rather, citing and quoting authorities, we pointed out the universal elementary rules that joint tenancies are created by contract; that the relation of and estate of joint tenancies may be created in any kind of property that is subject to be held in severalty; and, after quoting section 8-167, R. R. S. 1943, dealing with banks, we said: "This statute fixes the property rights of the persons named in the deposit where compliance with the statute has been had. * * * Upon the death of one payee the survivor takes the whole legal title free of any debts of the deceased unless a contrary intent affirmatively appears from the terms of the deposit." See, also, Slocum v. Bohuslov, 164 Neb. 156, 82 N. W. 2d 39. We point out also that section 8-317, R. R. S. 1943, dealing with building and loan associations likewise governs joint tenancy survivorship accounts therein. See, Tobas v. Mutual Building & Loan Assn., 147 Neb. 676, 24 N. W. 2d 870. In that connection, the statutes of Wyoming applicable here are in effect identical with our own except they contain no act having any similarity with section 30-624, R. R. S. 1943.

It will be noted that the language in the title of section 30-624, R. R. S. 1943, as originally enacted, and the act itself as well, relates to "decedents' estates" and attempts to provide a conditional liability of the surviving joint tenant for debts and obligations of a de-

ceased joint tenant as a lawfully existing asset of his estate with which to pay his creditors. In that connection, where a joint tenancy is created and enforceable under the laws of Wyoming, the rights of both tenants are vested in the whole of the property when the joint tenancy is created, and on the death of a joint tenant the surviving tenant takes his entire joint tenancy property clear and free of any personal or property liability for the claims of creditors. Thus no liability of the surviving joint tenant for the debts and obligations of the deceased joint tenant ever lawfully existed or became any part of the joint tenancy contracts here involved or any part of Kindler's estate with which to pay his creditors. The general rule is that: "The survivor takes under the agreement creating the joint tenancy, and not as the successor to the deceased joint tenant." 48 C. J. S., Joint Tenancy, § 1, p. 912. In other words, defendants' contractual property rights and duties were created and enforceable by and under the laws of Wyoming, which imposed no duty whatever upon them to pay any debts and obligations of the deceased joint tenant.

In that connection, the applicable and controlling general rule appears in Restatement, Conflict of Laws, § 609, p. 726, where it is said that: "If a judgment in an action provided by the law of the forum would impose on the defendant a more onerous duty than that imposed by the law of the state which created the right, or a substantially different duty, no action can be maintained."

Citing State ex rel. National Surety Corp. v. Price, 129 Neb. 433, 261 N. W. 894, and quoting from Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240, plaintiff relies upon the rule that: " 'It is thoroughly established as a broad general rule that foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the

forum.' " However, such cases are distinguishable from that at bar.

In that connection, we held in Whitney v. Penrod, 149 Neb. 636, 32 N. W. 2d 131, that: "A mere difference between the laws of two states, whether in statutory provisions, or otherwise, will not necessarily render the enforcement of a cause of action arising in one state contrary to the public policy of another state."

Also, as held in Green Finance Co. v. Becker, 151 Neb. 479, 37 N. W. 2d 794: "Comity is neither a matter of absolute obligation or mere courtesy or good will, but is the doctrine under which contracts made, rights acquired, and obligations incurred in one state are enforced by the courts of another state unless there is some definite public policy preventing recognition of such right or title."

Further, as stated in 15 C. J. S., Conflict of Laws, § 4, p. 858: "In accord with the general rule as to the enforceability of foreign law * * * it is usually held that a contract valid under its governing law * * * is considered valid everywhere, and will be enforced everywhere, unless the enforcement of the contract would violate the positive law or unless the enforcement of the contract would violate the settled public policy of the forum, or unless it would work an injury to the state or to its citizens." See, also, § 11, p. 880.

No authority is cited or found which would support a conclusion that recognition of defendants' rights and title established by the Wyoming contracts here involved, as a defense to plaintiff's actions, would violate the positive law or settled public policy of this state or work an injury to this state or to its citizens. We conclude that plaintiff's contention has no merit.

Some constitutional questions were presented and argued by the parties, but, in view of our prior conclusions, they require no consideration, discussion, or decision here.

We conclude that the judgment of the trial court

should be and hereby is affirmed. All costs in both cases are taxed to plaintiff.

AFFIRMED.