SUSIE TOBAS, EXECUTRIX OF THE ESTATE OF FRED TOBAS, DECEASED, ET AL., APPELLANT, V. MUTUAL BUILDING AND LOAN ASSOCIATION OF NORTH PLATTE, DEFENDANT, REID BUSH AND GERTRUDE HAMILTON, INTERVENORS AND APPELLEES.

24 N. W. 2d 870

FILED NOVEMBER 12, 1946. No. 32106.

V. H. *Halligan,* for appellant.

*Beatty, Clarke & Murphy* and *E. H. Evans,* for cross-appellant and appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ., and Pollock, District Judge.

CARTER, J.

The only question involved in this case is whether certificates of paid-up stock in a building and loan association made payable to "Fred Tobas or Gertrude Hamilton or either or survivor" and "Fred Tobas or Reid Bush or either or survivor," are payable to the survivor of such two persons upon the death of the other where the deceased purchased, caused their issuance, accepted and retained the possession of such stock certificates until his death. From a finding in favor of the survivors, the administrator of the estate of Fred Tobas and the administrator of the estate of Susie Tobas appeal.

The record shows that on August 24, 1933, Fred Tobas was the sole owner of paid-up stock in The Mutual Building and Loan Association of the value of $4,000. On that date he sold the stock certificates to the association for cash and

repurchased four $1,000 certificates. Two of the certificates were made payable to "Fred Tobas or Gertrude Hamilton or either or survivor" and the other two were made payable to "Fred Tobas or Reid Bush or either or survivor." It is not disputed that Tobas retained possession of three of the certificates until his death, he having cashed one of the certificates in which Reid Bush appeared as a joint payee in his lifetime.

The record discloses that Gertrude Hamilton was a stepdaughter of Tobas and that Reid Bush was her son. There is conflicting evidence in the record as to the relationship of these parties to Tobas during his lifetime. Without reviewing the evidence in detail we think it shows that Bush was always on very friendly terms with Tobas and that Gertrude Hamilton was at times in disfavor with him. At the time of the death of Tobas he left surviving him his fourth wife, Susie Tobas, who was the sole beneficiary in his will.

The evidence shows that Tobas collected the dividends on the stock and applied them to his own use. The dividend checks were made payable to Fred Tobas and were cashed by him on his own signature. In 1942, Tobas cashed one of the certificates on which Reid Bush appeared as a joint payee. It was cashed on the signature of Tobas only and the money obtained was used by Tobas as his own, although the record shows that he gave it to Reid Bush to be used in the purchase of a home. It is the contention of the appellants that the evidence shows Tobas always considered the stock certificates as his own during his lifetime and that he never intended and did not transfer a present interest in them to Gertrude Hamilton or Reid Bush when he caused their names to be included as joint payees in the manner hereinbefore shown. It is contended by appellants that the evidence shows Tobas intended that Gertrude Hamilton and Reid Bush were to have an interest only at the time of his death and not before, and that the joint payee provisions were therefore testamentary in character and void as being contrary to the statute of wills.

We think the decision of the case rests upon the interpretation to be given to that part of section 8-317, R. S. 1943, providing: "Whenever any such certificates are made to the joint account of two or more persons, the account represented thereby shall be payable to the survivor." This provision was first enacted in 1919 and does not appear to have been previously before this court for interpretation.

The principles announced in McConnell v. McCook National Bank, 142 Neb. 451, 6 N. W. 2d 599, appear to be determinative of the issues here raised. In that case the court had before it the question of the proper construction to be given to section 8-167, R. S. 1943, which provides: "When a deposit in any bank in this state is made in the name of two or more persons, deliverable or payable to either or to their survivor or survivors, such deposit, or any part thereof, or increase thereof, may be delivered or paid to either of said persons or to the survivor or survivors in due course of business."

In the McConnell case we held that the statute not only was for the protection of the bank, but that it also fixes the property rights of the persons named, unless a contrary status appears from the terms of the deposit. It was further held that when a deposit payable to either of two persons is made in a bank, either expressly as joint tenants with right of survivorship or without those qualifying words, upon the death of one of the payees the deposit under the statute is payable to the survivor or survivors. It was then held that the relationship of one payee to the other is not material under the wording of the statute.

It cannot be denied that the statute before us for consideration is in derogation of the common law. It is evident that the Legislature intended to eliminate the confusion, contradictions, and perplexing distinctions in the judicial precedents on this subject. Whether or not the provisions of the stock certificates here involved were to be decided under the law governing gifts among the living or on the theory that each joint payee held in trust for the benefit of the other, and the refinements growing out of these two

theories, evidently appeared so technical to the Legislature that legislation thereon was deemed advisable. That the Legislature had the power to define the meaning of the terms used in the issuance of building and loan association stock certificates cannot be questioned. What then did it mean when it used the language contained in section 8-317, R. S. 1943?

It seems to us that the Legislature has said when a building and loan association stock certificate is made to the joint account of two or more persons, that irrespective of previous judicial pronouncements concerning consideration, gifts, trusts, testamentary dispositions, and the multitude of other legal propositions contained in former cases on the subject, where one of the payees dies, the survivor or survivors are entitled to the full title thereto as a matter of statutory law. In other words, by causing the stock certificate to be issued in the form mentioned in the statute, the result therein set forth ipso facto obtains. If any other result is intended, the purchaser must manifest that intent by the language used. In re Estate of Johnson, 116 Neb. 686, 218 N. W. 739; McConnell v. McCook National Bank, *supra*.

We have examined the authorities relied upon by the appellant and find that they are not in point where a statute exists such as we have in the present case. The argument that the transaction was testamentary in character and void as a noncompliance with the statute of wills is not tenable for the reason that the quoted section of the statute relied upon furnishes ample authority for the disposition made, even though in conflict with the statute of wills. The one statute is no more sacred than the other. We know of no valid reason why the Legislature may not make exceptions to the statute of wills in providing for the disposition of the property of deceased persons, or change the method of creating the various types of estates in real or personal property if constitutional requirements are met. The language of the statute is plain and unambiguous. It was clearly within the power of the Legislature to enact. By

simply giving the ordinary meaning to the words used in the statute, the position of the appellees in the present case must be sustained.

The appellee cross-appeals from the action of the trial court in failing to tax the costs of the deposition of Reid Bush against the appellants. The basis of the trial court's action is not shown by the record. The ordinary rule is that the successful party is entitled to a judgment for costs. § 25-1708, R. S. 1943. No reasons appear of record why the general rule was not followed in the present case. Under such circumstances the successful party should be allowed costs as of course. § 25-1710, R. S. 1943. The alleged error raised by the cross-appeal is well taken and the costs of the deposition will be taxed to appellants.

Consequently the judgment of the district court, with the cost of the deposition in question added thereto, is affirmed.

AFFIRMED AS MODIFIED.