JOSEPHINE EDEN, INDIVIDUALLY, AND JOSEPHINE EDEN, SPECIAL ADMINISTRATRIX OF THE ESTATE OF WILLIAM F. EDEN, DECEASED, APPELLEE AND CROSS-APPELLANT, V. WILLIAM JOHN EDEN ET AL., APPELLANTS AND CROSS-APPELLEES, IMPLEADED WITH COMMERCIAL SAVINGS AND LOAN ASSOCIATION, A CORPORATION, ET AL., APPELLEES AND CROSS-APPELLEES, MARGARET EDEN ET AL., INTERVENERS-APPELLEES AND CROSS-APPELLEES.

157 N. W. 2d 543

Filed March 22, 1968. No. 36649.

Marchetti & Samson and Joseph J. Vance, for appellants.

Martin A. Cannon and Matthews, Kelley & Cannon for appellees and interveners-appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

Plaintiff, widow of the deceased, sues personally and as administratrix for the recovery from two defendant sons of a jointly held savings account. The two daughters intervene. The principal question involved is the determination of whether an oral trust has been established in two jointly held savings accounts in the sum of $17,000 that had been deposited by the deceased in the name of himself and the defendant son, William John Eden. The district court held that an oral trust in the accounts had been established and it rendered judgment accordingly. The two savings and loan associations, being stakeholders in the case, did not actively participate and do not appeal. The two defendant sons appeal. We affirm the judgment.

Plaintiff in her action asserts that the joint savings accounts were the common property of herself and the deceased and were deposited without her consent; and second, claims that the interest of her deceased husband in the accounts with the son, William John Eden, were subject to administration as an asset of the deceased's estate. It is undisputed that the funds in the joint deposit were held jointly by the deceased and the defendant, William John Eden, at the time of the death of the de-

ceased, but after his death the defendant, William John Eden, withdrew them and redeposited them to the joint account of himself and his brother, Albert Eden, and for that reason Albert Eden is a party defendant. The interveners, the two daughters of the deceased, joined in the prayers of the plaintiff's petition and prayed that in the event that such relief was not granted to the plaintiff, the defendants be found to be trustees of the fund for the benefit of four children of the deceased.

The evidence shows that the deceased during his lifetime deposited some $17,000 in two joint accounts with the defendant son, William John Eden. Defendants contend first that the statute, section 8-317, R. R. S. 1943, controls the disposition and ownership of joint deposits in savings and loan associations and that parol evidence cannot be used to establish a trust in the funds involved. This first contention involves the effect of section 8-317, R. R. S. 1943. This statute, insofar as is material here, provides: "Wherever any such certificates are made to the joint account of two or more persons, the shares represented thereby shall be payable to any one of them or to the survivor or to any one of the survivors of them." Section 8-136, R. S. Supp., 1965, formerly section 8-167, R. R. S. 1943, is a similar statutory provision relating to commercial banks. These two statutes have been construed as providing for the same disposition of property. Rose v. Hooper, 175 Neb. 645, 122 N. W. 2d 753. In Tobas v. Mutual Building & Loan Assn., 147 Neb. 676, 24 N. W. 2d 870, this court said that the language of section 8-317, R. R. S. 1943, meant it was: "* * * intended for the protection of the building and loan association and, in addition *thereto, fixes the property rights of the persons named,* unless a contrary intent affirmatively appears from the terms used in the stock certificate." (Emphasis supplied.) The contention, therefore, is made that this is a rule of property as between joint depositors and controls the instant case. The case here, of course, involves third parties, the widow and inter-

vener heirs of the deceased. The argument in the briefs in this case overlooks the direct holding of this court in Nelson v. Rasmussen, 164 Neb. 274, 82 N. W. 2d 418, where this court said, at page 290, in construing former section 8-167, R. R. S. 1943, now section 8-136, R. S. Supp., 1965, as follows: "The form and nature of a joint deposit in the name of two persons in a bank is not, upon the death of one of the co-owners, conclusive as to the ownership of the deposit by the surviving co-owner as between him and a third person who claims that the surviving co-owner holds the legal title to the funds in trust for the third party." To hold otherwise would permit a trustee or trustees to defeat a trust by the simple expedient of depositing the money in a joint account in a bank or savings and loan association account. There is no merit to this contention.

Parol evidence is admissible in an action of this nature to establish an oral trust. Minahan v. Waldo, 161 Neb. 78, 71 N. W. 2d 723. There is no attempt in this case to vary the terms or the conditions of the deposit contract, but rather parol evidence is being used here in an action by strangers to the contract seeking to establish a trust agreement with reference to the disposition of the funds and inconsistent with the terms of the joint tenancy deposit. Section 8-317, R. R. S. 1943, only fixes the "property rights of the persons named." See Tobas v. Mutual Building & Loan Assn., *supra.*

Defendants' next contention is that the evidence is insufficient to establish the existence of an oral trust. The rule is that the evidence must be clear, satisfactory, and convincing in character to establish an express oral trust. Halsted v. Halsted, 169 Neb. 325, 99 N. W. 2d 384. All deposits in the joint accounts were made in the name of the deceased. The intervener sister testified that while driving them back to their home from the cemetery, the defendant, William John Eden, advised the intervener sisters that their father had $17,000 in two savings and loan associations and that their father had told the de-

fendant to pay the bills with the money and to divide the remainder between the four children (the two defendants and the two intervener sisters). The interveners also testified that on the Sunday following the funeral, while at the home of the defendant, William John Eden, there was a discussion of the funds in the account. This discussion involved the payment of the deceased's bills and the mechanics of the distribution of the funds according to the trust agreement. This testimony stands uncontradicted and undisputed in the record. The defendant William John Eden remained silent and it stands uncontradicted and undisputed in spite of the, fact that he was present at the trial and testified. Cross-examination of the interveners left this oral testimony unshaken and stronger. The evaluation by the trial court of the oral testimony of these witnesses under these circumstances is a persuasive if not controlling consideration on an examination de novo on appeal in this court. This court in determining the weight of the evidence will consider the fact that the trial court observed the witnesses and their manner of testifying. And if conflicting evidence is specially resolved by the trial court according to the demeanor of the witnesses, the resultant findings will be considered correct on de novo review in this court. Meadows v. Skinner Manuf. Co., 178 Neb. 856, 136 N. W. 2d 184; Schoenrock v. School Dist. of Nebraska City, 179 Neb. 621, 139 N. W. 2d 547. The application of the rule is stronger here because the evidence is undisputed and is particularly significant in determining whether the weight of the evidence reaches the point of being clear and convincing.

Beyond this we examine the circumstances. The record shows that the defendant, William John Eden, after the conversation with the interveners withdrew the funds from the joint accounts and placed them in the name of himself and Alfred Eden, his brother. It further appears that after this, the defendant, William John Eden explained to the interveners that Albert's name

was placed on the accounts "In case something happened to him, someone could get the money out." It seems odd that he would transfer the funds to a joint account with his brother if he claimed sole ownership as he does now. And it seems rather unusual, considering the age of this defendant and the lack of any evidence as to his poor health and the fact that he was a married man, that he would transfer these funds into a joint deposit with his brother during the short period of time that it would take to dispose of the funds either in the estate or by distribution according to the terms of the oral trust. The reasonable inference is that he felt a compulsion to remove the funds from the reach of the estate proceedings. And we observe that there is no evidence in this record concerning the family circumstances or the relationship of the deceased to his sons and daughters which would warrant a belief that the deceased intended to make a disposition of these funds disinheriting his two daughters. In fact, the evidence shows that one of them was suffering from a disability. We return to the fact of the silence of this defendant and the undenied testimony of the interveners. In weighing the evidence, particular significance may be given to the fact that a man remains silent when confronted with serious and responsible evidence against himself which is within his power to contradict. See, Adamson v. California, 332 U. S. 46, 67 S. Ct. 1672, 91 L. Ed. 1903, 171 A. L. R. 1223; 31A C. J. S., Evidence, § 295, p. 755. In conclusion, we hold, as the trial court did, that the evidence is clear and convincing that the interveners have met the burden of proof in establishing an oral trust in the $17,000 joint deposit.

Overlapping their previous contention, the defendants' next position is that $5,500 of the funds in the joint accounts were deposited from the earnings of William John Eden and his wife. He does not plead this but first asserts this on his cross-examination, having been called as a witness by the interveners. This testimony, of

course, is contrary to the undisputed testimony of the interveners that the defendant, William J. Eden, told them the amount of the trust was in the sum of $17,000. The evidence shows that the deceased was a frugal man and that out of his earnings alone he would have been able to deposit the amount involved in the joint deposits. Defendant, William John Eden, testified that he would slip $25 to $50 in cash in the deceased's deposit book and then his father would deposit it in the account. But in reviewing the deposit slips he was able to identify only one deposit of cash of some $270 as being his. We note that his wife did not testify and that in the transfer, after the death of his father, to the joint account with his brother he left his wife out even though he testified that she was one of the contributors to the account. Every deposit was made in the name of the deceased father. Generally the defendant's testimony was vague and inconclusive. He agreed that he never signed a single deposit slip. He kept no records and the deceased reported for income tax purposes all of the interest on these accounts. The defendant, William John Eden, had his own account in the same savings and loan associations. It is strange that he would put his own funds in his father's account and not in his own, especially in light of his testimony that the funds were contributed to by his wife. And he never withdrew any of the money from the accounts. We will not elaborate further. In weighing this testimony we apply the same considerations previously observed concerning the trial court's observation of the demeanor and manner of testifying in evaluating this defendant's testimony. Although no objection was made to this testimony under the dead man's statute, section 25-1202, R. R. S. 1943, the principle underlying that rule seems to be peculiarly applicable here. The deceased's lips are closed and the equivocal and uncertain nature of this testimony, tied together with the temptation present, points quite heavily to its credibility. We hold, quite beyond any question of where the burden of proof

rests, that the evidence shows that the $17,000 in joint accounts was wholly owned by the deceased as this defendant implied in his undisputed oral testimony establishing the trust. There is no merit to this contention.

We now dispose of the contention of the widow plaintiff in her cross-appeal. She does not contend here in this case that she has proved her allegation of partial personal ownership of the funds. In her second cause of action she asserts that the funds were those of the deceased and passed to the plaintiff as special administratrix. She asserts that the creation of the trust destroyed the joint tenancy purported to have been created and, in effect, asserts that the property was held as a tenancy in common and that the funds, therefore, passed to the estate of the deceased. We have no doubt that the creation of a trust was inconsistent with the joint tenancy and destroyed the right of survivorship incidental to a joint estate as the plaintiff contends. Anson v. Murphy, 149 Neb. 716, 32 N. W. 2d 271; White v. Ogier, 175 Neb. 883, 125 N. W. 2d 68. But the creation of the trust was inconsistent with both a joint tenancy and a tenancy in common. The application of the rule here is obviously irrelevant. The plaintiff's rights are derivative in nature. She takes no greater interest than the deceased had in the property. This was personal property of the deceased. Undisputedly he created a valid oral trust payable to his four children on his death. Whatever tenancies were theoretically created or destroyed become irrelevant because of the conversion into an oral trust of the whole deposit. We also observe that plaintiff's assertion that an oral trust was established is self-defeating of this contention. There is no merit to this contention.

The judgment of the district court is correct in all respects and is affirmed.

AFFIRMED.

SMITH, J., participating on briefs.